### CORNWALL *against* HOYT.

It seems to be the better opinion, that a chose in action accruing to the wife during coverture, vests absolutely in the husband, and can be sued only by him or his representatives.

But where the husband, a citizen of this state, during the revolutionary war, abandoned his country, and joined with its enemies; in consequence of which his estate was confiscated according to law; out of which an allowance was made to his wife, who continued to reside in this state; and in 1789, a writing was given to her, while her husband remained abroad, to

secure to her the payment of an annual sum of money, during her life, for *Fairfield,* the rent of the estate so allotted to her ; in a suit brought by her on such June, 1829. writing, after the death of her husband, it was held, 1. that such suit was sustainable ; 2. that the treaty of peace between *Great Britain* and the *United States* did not affect the capacity of the wife ; and 3. that lapse of time, after the making of the promise and before the several annuities became due, afforded no presumption of payment or relinquishment of the contract, although seventeen years, unexplained, might be evidence that all sums payable so long before the date of the writ, had been paid.

Cornwall
*v.*
Hoyt.

Writings given as leases of land, though not executed so as to transfer a title or interest in land, may be received in evidence, to shew, that the defendant and others under him, occupied the land, by permission of the plaintiff.

THIS was an action on a note or writing in the following terms : " I, *Moses Hoyt,* of *New-Fairfield,* promise to pay to *Mary Cornwall,* of *New-Fairfield* aforesaid, the sum of forty shillings, lawfully money of this state, annually, during the term of her natural life, payable in any sort of produce of this state, or merchants' goods, at the common market price, to be delivered to her, or her order, at the place where said *Hoyt* now dwells in *New-Fairfield ;* it being for the use or rent of a certain piece of land, leased to the said *Moses Hoyt,* by said *Mary Cornwall ;* and if said land shall be taken from said *Hoyt,* by lawful authority, the above obligation to be null and void, otherwise to be in full force and virtue. In witness whereof, I have hereunto set my hand, this 3d day of *May,* 1789.

[Signed.]        *Moses Hoyt.*"

The defendant pleaded, 1st, the general issue ; 2ndly, full payment.

The cause was tried at *Fairfield,* at an adjourned term in *April,* 1829, before *Daggett,* J.

On the trial, the plaintiff, after proving the execution of the note, gave in evidence a lease from her to the defendant, of the land mentioned in the note, of even date therewith, accompanied with proof that the defendant entered upon and occupied the premises until *February* 1795, when he removed to the city of *New-York,* where he has ever since resided. The plaintiff also gave in evidence a writing signed by the defendant, not under seal or acknowledged or recorded, dated *February* 24th, 1795, purporting to be a lease of the premises, to *William Wakeman,* during the life of the plaintiff, accompanied with proof, that *Wakeman* entered upon and occupied the premises until the 11th of *June,* 1803 ; that he then leased them to *Eliphalet Bradley,* by a lease of that date produced in court, during the life of the plaintiff ; that under this lease,

*Fairfield,*
June, 1829.

Cornwall
*v.*
Hoyt.

*Bradley* entered upon and occupied the premises until his death in 1819 ; and that his son and executor had occupied them since. To the admission of these documents, particularly, the writing given by the defendant to *Wakeman,* the defendant objected ; but the judge admitted them.

The plaintiff also proved, by sundry records of the county court for *Fairfield* county, and of the court of probate for the district of *Danbury,* that during the war of the revolution, and before the month of *September* 1778, *John Cornwall,* then the husband of the plaintiff, left the *United States* and joined himself to their enemies ; that all his real estate, including the premises, was confiscated pursuant to laws then existing, and became vested in this state ; and that a portion thereof, being the premises, was, by the court of probate, set off to the plaintiff and her then minor children ;(a) that the plaintiff continued to

(a) In *May,* 1778, the General Assembly of this State passed an act, providing, in the 1st paragraph : " That all estates real and personal, lying and being within this State, which belong to any person or persons whatever, who have heretofore, voluntarily gone over to, joined with and screened themselves under the protection of, the enemies of the *United States* of *America* ; or have aided and assisted them in their hostile measures against said States, and have continued so to do, until the passing of this act ; or who shall hereafter voluntarily go over to, join with, and screen themselves under the protection of, or shall aid, abet and assist said enemies in their measures as aforesaid ; shall be forfeited to and for the use of this State : to be proceeded with, confiscated, held and improved as in this act is hereafter directed." The act then made it the duty of the select-men of the several towns in this State to give information to the next assistant or justice of the peace of persons owning estates within this State, which were, or ought to be, forfeited, by the conduct of their owners ; and directed such assistant or justice of the peace to summon the party informed against to appear before the county court, to shew reasons why such estate should not be adjudged forfeit. After providing for the service of the process, the act proceeded thus : " Which said court, at any session thereof, are authorized, impowered and directed to take cognizance thereof, and proceed duly to enquire into the truth of the facts alleged ; and on finding the same to be justly founded and true, shall give judgment and sentence, that all the estate, real and personal, of such person shall be forfeited to and for the use of this State : a copy of which judgment shall be, by the clerk of such court, forthwith transmitted and certified to the court of probate of the district wherein the estate so adjudged forfeit, or the greatest part thereof, shall be ; which court shall thereupon, as soon as may be, grant administration of such estate to some faithful and meet person or persons, taking sufficient bond with surety, as in case of intestate estates, for a due and faithful performance of his or their duty as administrator according to law ; and said administrator shall, within twenty days after such appointment, exhibit to said court an inventory of all the estate, which shall come to his knowledge, that belonged to such inimical

reside in *New-Fairfield*, for several years after the execution of the note, and then went to her husband in *Canada*, where she has ever since resided, and where she now resides ; that her husband died there in 1817, having never returned to the *United States.*

It was admitted, that the defendant paid the stipulated rent until *May* 1794, and that no payment had been made thereon since ; though it was proved, that the defendant had said, since the service of the writ, that " he had paid the rent for four or five years, but had paid none since—that there was no agent to pay the rent to—and that the claim was a devilish forty years old thing, hatched up against him."

Upon these facts the plaintiff claimed to recover. The defendant insisted, that, from the lapse of time the jury ought to presume the note paid, and her title to the annuity extinguished ; that as she was a feme covert, when the note was given, no right of action thereon ever vested in her ; that the note was invalid for want of consideration ; and that, by the treaty of peace of 1783, *John Cornwall* was restored to all his rights ; and therefore, the plaintiff could not recover ; and the defendant prayed the court so to charge the jury. The court charged the jury, that the plaintiff might recover ; for the note, upon the testimony, ought not to be presumed to be paid ; as the defendant had always since its date, except for a few of the first years, resided out of this state, and had, within two or three years past, acknowledged its existence, and that he had paid the stipulated rent only for three or four years ; and as *John Cornwall*, the husband, had no right or interest in the land, but the title thereto was, by the laws of *Connecticut*, vested in her : that in estimating the damages, however, the jury might consider the annuity paid up to a period seventeen years before the date of the writ.

person, and as appraised by such persons under oath as shall be appointed by said judge."

By a subsequent paragraph of this act, it was provided :  " That said judge of probate shall, at the time of granting such administration, appoint two or more judicious, disinterested persons commissioners to examine and adjust the claims of the creditors to such estate, who shall   proceed in the same way, have the same powers and be under the same regulations, as commissioners on insolvent estates by law have and are ; and shall make return of their doings to said court, in such time as said judge shall limit.   And on such return, said judge of probate *shall make such allowance to the wife and family* of such person (if such there be) as, *on consideration of their circumstances, shall appear reasonable and just.*"

*Fairfield,*
June, 1829.

Cornwall
*v.*
Hoyt.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial, on the ground that the evidence objected to was improperly admitted, and that the charge was erroneous.

*M. B. Whittlesey* and *Sherman,* in support of the motion, contended, 1. That the note in suit, as soon as it was given, became the property of the husband; and consequently, on his death, it went to his personal representatives, and did not survive to his wife. *Barlow* v. *Bishop,* 1 *East* 432. 1 *Swift's Dig.* 28. *Reeve's Dom. Rel.* 127. *Griswold* v. *Penniman &* al. 2 *Conn. Rep.* 564. *Fitch* v. *Ayer,* 2 *Conn. Rep.* 143.

2. That there was nothing in the peculiar circumstances of this case to deliver it from the general rule. The husband was guilty of no crime or breach of duty towards his wife. He went away leaving her in possession of his estate. Here was *no desertion* of *her.* Nor had he been exiled or banished, by the government. As to an *abjuration of the realm,* there is not, and since the time of *James* I. there cannot be, any such thing. There is nothing here in favour of the plaintiff to distinguish the case from *Bogget* v. *Frier &* al. 11 *East* 301.

3. That by the treaty of peace, in 1783, and the treaty in 1794, the condition of *John Cornwall* (whatever it might have been before) became what it would have been, had he been born in *Canada,* and had not taken up arms against this country.(*b*)

(*b*) The 5th article of the treaty between *Great Britain* and the *United States* of *America,* concluded at *Paris, September* 3rd, 1783, usually called the *treaty of peace,* contained the following provisions : " ART. 5. It is agreed that the congress shall earnestly recommend it to the legislatures of the respective states, to provide for the restitution of all estates, rights and properties, which have been confiscated, belonging to real *British* subjects, and also of the estates, rights and properties of persons resident in districts in possession of His Majesty's arms, and who have not borne arms against the *United States.*"

The 6th article of the same treaty is as follows : "ART. 6. That there shall be no future confiscations made, nor any prosecutions commenced against any person or persons, for or by reason of the part, which he or they may have taken in the present war ; and that no person shall, on that account, suffer any future loss or damage, either in his person, liberty or property ; and that those who may be in confinement on such charges, at the time of the ratification of the treaty in *America,* shall be immediately set at liberty, and the prosecutions so commenced be discontinued."

The 9th article of the treaty between the same parties, concluded at *London, November* 19th, 1794, usually called *Jay's treaty,* is as follows : "ART. 9. It is agreed, that *British* subjects, who now hold lands in the territories of the

His condition was not different from that of any other *British* subject. But a *foreigner* has the same rights in relation to his wife's estate, that a citizen has.

4. That the lapse of time, *viz.* from 1794 to 1826, afforded a sufficient presumption of payment, and so the jury should have been instructed. The defendant's living in *New-York*, was no impediment to the collection of the note.

5. That the writings given in evidence by the plaintiff, were improperly admitted, as they were not executed in such a manner as to transfer a title, and they were irrelevant for any other purpose. [This point was not much insisted on.]

*N. Smith* and *Betts,* contra, contended, 1. That as the contract in question was an express one, made to the wife, and as she was the meritorious cause of action ; the right of action survives to her. 1 *Chitt. Plead.* 16. 17. 20. *Philliskirk* & ux. v. *Pluckwell,* 2 *Mau. & Selw.* 393. *Draper* v. *Jackson* & ux. 16 *Mass. Rep.* 480.

2. That under the peculiar circumstances of this case, the plaintiff is, at all events, entitled to the money. When the note was given, the husband was disabled to sue in her right, and was *civiliter mortuus.* If she could not sue, what was to become of her ? 2 *Stark. Ev.* 690. and n. *y. z.* 1 *Pow. Cont.* 75. *Gregory* v. *Paul,* 15 *Mass. Rep.* 31. 34. But this case is much stronger than where the husband is banished or transported. The husband of the plaintiff was in the situation of a convicted traitor. He became not merely an outlaw, but an alien enemy.

Further ; aside from the disability of the husband, the act of *May,* 1778, in direct terms, gave the property in question to the wife. It was an allowance made to her, by the judge of probate, under the statute. The title was vested in her absolutely, by express statutory provision. This, of course, gave her all the power necessary for the enjoyment of the property.

3. That neither the treaty of peace, nor *Jay's* treaty, had any effect on this case. In the first place, there is no provis-

United States, and American citizens, who now hold lands in the dominions of His Majesty, shall continue to hold them according to the nature and tenure of their respective estates and titles therein ; and may grant, sell, or devise the same to whom they please, in like manner as if they were natives ; and that neither they, nor their heirs or assigns shall, so far as may respect the said lands and the legal remedies incident thereto, be regarded as aliens,"

ion in either of these documents applicable to persons in the situation of *John Cornwall.*    Secondly, there is no provision making restitution of the forfeited rights of any class of persons.    Thirdly, *John Cornwall* has done nothing to avail himself of any provision in his favour.

4. That the charge was unexceptionable in regard to presumption of payment from lapse of time.    Surely, no presumption of payment could arise until the money became due ; and as to all the annuities which had been due seventeen years, the court did leave it to the jury to presume them paid.    Lapse of time is not a bar, nor conclusive evidence of payment.

5. That the documents given in evidence by the plaintiff, were properly admitted.

PETERS, J.    I. It has long been a moot point, whether a note or bond given to a wife, was suable in the name of the husband, or whether she may join in the action.    If the property be his, she cannot join : if it be hers, she *must* join.    By the common law, the chattels personal of the wife, are vested in the husband *absolutely*, but choses in action *conditionally*,—i. e. they are his, if he reduce them to possession during the coverture ; otherwise, they revert to her, or her representatives. There are a multitude of cases wherein the same rule has been applied to choses in action given to the wife during the coverture, especially where she is the meritorious cause of action— *i. e.* where the consideration of the promise arises from her property or personal labour,—though it is a truism, that a wife has no personal property, and that all her earnings vest in her husband.    *Pratt &* ux. v. *Taylor, Cro. Eliz.* 61.    *Cookston &* ux. v. *Castline, Cro. Eliz.* 96.    *Brashford* v. *Buckingham &* ux. *Cro. Jac.* 77. *Philliskirk &* ux. v. *Pluckwell,* 2 *Mau. & Selw.* 393.    1 *Chitt. Plead.* 19. and the cases there cited.    But it seems to be the better opinion, that a note to a wife, is payable to the husband, and can be sued by him or his representatives only ; and so it was decided in *Barlow* v. *Bishop,* 1 *East,* 432. where a note was given to the wife, indorsed by her, and sued by the indorsee.    The court said : " It is clear, that the delivery of the note to the wife vested the interest in her husband."    The authority of the case is recognized, by this Court, in *Griswold* v. *Penniman,* 2 *Conn. Rep.* 564. 566. wherein the late Chief Justice, in delivering their unanimous opinion, *inter alia,* said : " As to the property of the wife accruing dur-

ing coverture, the same rule [*ut ante*] is applicable, excepting in regard to choses in action. These vest absolutely in the husband." "Where a bond or note is given to the wife, the husband can maintain an action in his own name." A similar opinion was expressed, by the same Court, in *Fitch* v. *Ayer,* 2 *Conn. Rep.* 143. 145. where a legacy was given to the wife during coverture. "It is, in effect, and by law, a gift to the husband himself." Vid. 1 *Swift's Dig.* 28.

But a decision of this question is, perhaps, unnecessary ; as it appears of record, and may be reviewed, by writ of error.

2. Whatever may be the law relative to a chose in action accruing to the wife during the coverture, in ordinary cases, it cannot affect the plaintiff. Her husband abandoned his country, and joined with its enemies *bello flagrante,* and thereby became not an alien, but a traitor. *McIlvaine* v. *Coxe's Lessee,* 4 *Cranch* 209. And the question now is, what effect did this have upon the capacity of his wife ? Before this event, she could neither sue, nor be sued, *ex contractu ;* as her legal existence was merged in that of her husband. *Co. Litt.* 112. 1 *Bla. Comm.* 442. By the common law, when a husband is banished, abjures the realm or goes into exile, he becomes *civiliter mortuus ;* and the wife's power of contracting, suing and being sued, revives. *Derry* v. Duchess of *Mazarine,* 1 Ld. *Raym.* 147. Lady *Belknap's* case, *Co. Litt.* 132. *b.* The case of *Margerie de Mose,* wife of *Thomas* of *Wayland, Co. Litt.* 133. *a.* And I can perceive no difference between alien enemies and a traitor who has joined them. " Under *banishment,*" says the late Ch. J. *Swift,* "is comprehended what, in more modern times, would be called *transportation ;* and it has been determined, that where a husband has been banished for a limited time, which had not expired, the wife might be sued as a feme sole." 1 *Swift's Dig.* 36. *Gregory* v. *Paul,* 15 *Mass. Rep.* 31. 33. "On the same principle," he proceeds, where a husband has been sentenced to new-gate, or any of the public prisons in the *United States,* for life, or even for a shorter time, it would seem the wife ought to have the same power to make contracts and to sue and be sued, as a feme sole ; for there is the same reason and the same necessity, as in the case of banishment. It is sufficient if the husband was in banishment, when the contract was made ; or if it had expired, that he had not returned. *De Gaillon* v. *L'Aigle,* 1 *Bos. & Pull.* 357. *Bogget* v. *Frier* & al. 11 *East,* 301.

*Fairfield,*
*June, 1829.*

Cornwall
*v.*
Hoyt.

3. The treaty did not restore the rights of *John Cornwall.* It stipulates, indeed, that Congress shall recommend the restitution of all confiscated estates belonging to *real British* subjects and others resident in districts protected by His Majesty's arms, who had not borne arms against the *United States.* But this man was not a *British* subject, but a rebellious citizen; and the presumption is, that he bore arms against the *United States;* for he joined with their enemies, and never requested restitution, which Congress did recommend, but had no power to enforce.

4. The statute of limitations had no effect on the plaintiff's claim. This is probably the first time, that a debt was supposed to be outlawed before it became due. This is a continuing annuity, and never can be presumed paid, during the life of the annuitant, although seventeen years, unexplained, may be evidence, that all sums payable so long before the date of the writ, had been paid. But on this point I give no opinion.

5. The documents given in evidence by the plaintiff, and admitted by the court, were not offered to prove title or interest in land, but merely to evince, that the defendant and others under him, occupied the premises by the permission of the plaintiff. Parol evidence would have been equally admissible, and would have had the same effect.

I am, therefore, of opinion, that the decisions at the circuit were perfectly correct, excepting only the application of the statute of limitations to a part of this note; but of this the defendant cannot complain; and therefore, I do not advise a new trial.

The other Judges were of the same opinion.

New trial not to be granted.