CLARK & GRUBB, plaintiffs in error, v. CATHARINE VALENTINO, defendant in error.

(Atlanta, June Term, 1870.)

MARRIED WOMAN—DESERTION BY HUSBAND—RIGHT TO CONTRACT*—RIGHT TO SUE.—A married woman whose husband has deserted her and resides in another State, separate from her, has the right to contract and be contracted with, and to sue and be sued, as a feme sole.

SAME—SAME—CONTRACT TO PAY DEBT OF HUSBAND—LIABILITY OF SEPARATE ESTATE TO PAYMENT OF JUDGMENT.*—When, after such desertion by the husband, the wife, prior to the adoption *of the Code contracted to pay a debt due by the husband, in consideration that the creditor would not proceed to attach his property in her hands, she is liable. And in case judgment is obtained against her on the contract, her

---

*MARRIED WOMAN—POWER TO BIND SEPARATE ESTATE.—Section 1783 of the Code, which declares "that while the wife may contract she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband; and any sale of her separate estate made to a creditor of her husband in extinguishment of his debt, shall be absolutely void," applies not only to a separate estate of the wife created by deed, but to any property held by her as "separate estate" under the act of 1866 or constitution of 1868, and under this rule a mortgage made by the wife to secure a debt of her husband is void. Dunbar v. Mize, 53 Ga. 435. In this case, the court said: "The case of Clark v. Valentino, 41 Ga. 143 does not touch the question we are now discussing. There the contract of Mrs. Valentino was made in 1860, before the Code, and the question was, whether, under the act of 1851, her earnings during the separation between her and her husband stood upon the same footing as though they had come to her by a deed restricting her rights. I did not agree to this decision, but it turned on wholly a different question from that involved here."

separate property, acquired during the separation, or otherwise, is subject to its payment; provided, in case the separate estate is given to her by deed or will, that the donor has not imposed by the instrument any such restrictions upon her power of alienation, as deny to her the right to sell or bind it for the payment of the husband's debts. If she holds the property by deed or will, she holds it subject to such conditions or restrictions as the donor may have imposed. McCay, J., dissenting.

Married Women. Promissory Notes. Before Judge Pope. Fulton Superior Court. November Term, 1870.

Clark & Grubb sued Catharine Valentino and Gabriel Valentino upon a promissory note, for $195 00, dated the 7th of January, 1860, payable one day after date to said plaintiffs or bearer. They pleaded jointly the general issue, that the note was given for goods bought by Louis Valentino, and in which they had no concern, and separately, that Catharine was, at the date of the note, and yet the wife of said Louis, (who resides at Beaverdam, Wisconsin,) and that Gabriel was, at the date of the note, a minor.

Plaintiffs' attorney allowed a verdict taken in favor of Gabriel, and read in evidence the note. Clark testified that he was about to have the goods of said Louis, which were in said Catharine's possession, attached upon an open account, in their favor, against said Louis, when Gabriel and Catharine proposed to give their said note, for the account, to prevent the attachment of said goods and the consequent breaking up of their business. The goods were merchandise, part to which plaintiffs had sold. By another witness it was shown that, in the latter part of 1859, said Louis left Atlanta, saying that he would never return.

Mrs. Valentino, in her own behalf, testified that the note was procured by plaintiffs' threatening to sell her property if she did not give it; that her husband is living; that she last saw him in August, 1866; that he left Atlanta in August, 1857 or 1858, never returned, and she had no direct communication with him till 1866. She testified that in January, *1867, she owned property in Atlanta, separate and apart from her husband. It was admitted by plaintiffs that Mrs. Valentino at, and before the date of the note, was a married woman; that her husband is alive; that she has no separate real property, except that held and owned by her trustees; that she had at the date of the note such trustee, and yet has; that —— Fitch, of Griffin, is such trustee.

The evidence being closed, the Court charged the jury that even though Catharine Valentino had been deserted by her husband before the date of the note, still, if the note was given in settlement of her husband's account to plaintiffs, contracted prior to his desertion, the note was void, and it made no difference whether the property on which plaintiffs proposed to levy their attachment was her husband's or not.

The jury found for defendant. Plaintiffs' counsel moved

for a new trial upon the ground that said charge was erroneous. The refusal of the new trial is assigned as error.

Hammond & Welborn, for plaintiffs in error, said desertion makes wife feme sole: Acts 1851-2, 237; 15 Mass., 30; 4 Met., 478; 4 McCord, 148; 22 Ill., 391. The consideration was not husband's debt: Code, sec. 1773; 2 Par. on Con., 10; 3 Met., 396; 2 Speer, 348. This note given before Act 1851, and not controlled by it: 17 Ala., 802; 28, 544; 2 Sto. Eq. Juris., sec. 1400; 12 Johns, 585; 32 Ga., 604.

A. W. Hammond & Son, for defendant.

By the Court—BROWN, C. J., delivering the opinion.

In this case the proof is clear that the husband had deserted his wife, and leaving her in Georgia, that he had gone to another State where he still resides. In such case the wife is competent to contract as a feme sole, and she is able to sue, and liable to be sued: See 2 Kent, side page, 150; 15 Mass., 30; 4 Met. Rep'ts, 478; 16 Ill., 278. And see Act of 1851, page 237.

But it is insisted that she was not competent to bind herself *to pay any debt of her husband. This may be true as the law now stands: See Code, Section 1773. But this contract was made prior to the adoption of the Code, and must be governed by the law as it then existed. The rule was firmly established in England at the time of our adopting statute, that the wife, as to her separate estate, if no restrictions were placed upon her power of alienation by the donor, was a feme sole, and that she could bind it by any contract she might make, as well to pay the debts of her husband, as for any other consideration; provided, always, the transaction was free from fraud or undue influence: See Dallas v. Heard et al., 32 Georgia, 604, where the authorities are so fully and ably reviewed by Judge Lyon, that it would be useless for me to do more than refer to what is there said. In that case, Mrs. Lane was possessed of certain property, which, by a decree in equity, in Troup Superior Court, was vested in Anderson, for the sole and separate use, benefit and behoof of her and her children, free from any debt, contract or liability of her husband; and of certain other property bequeathed to the said Anderson in trust, for the sole and separate use of Mrs. Lane and her children, during her life, and at her death, to be equally divided among the said children, the property not to be subject to the debts of her said husband. In 1856, while Mrs. Lane was a feme covert, she and her son executed a joint and several promissory note to Dallas for $276 25. At the date of the note, Mrs. Lane held the property aforesaid and her son was insolvent, and so remained at the time the bill was filed.

In 1858, Mrs. Lane and her children entered into an agreement that the trust property should all be sold except certain

Clark & Grubb v. Valentino

articles, and that the proceeds, after paying all debts for which it was legally bound, be divided among the children, in consideration that each should pay to the mother, annually, one-sixth part of $350 00 during her natural life. The property was so divided, and in a short time she died, leaving no property. Dallas then filed a bill against the children, insisting that his debt was a charge upon the separate estate of Mrs. Lane, and that as the children had the *property, they ought each to pay their proportion of the debt. The Court below dismissed the bill for want of equity, holding that the separate estate was not so liable, and this Court reversed the judgment, and laid down the rule as follows: "As to the first question, that is, whether the property was bound for the payment of the debt, we hold that it was. Wherever property is secured to a feme covert to her sole and separate use, without qualification, limitations, or restrictions as to its use and enjoyment, she is to be regarded in respect to such estate, in all respects, as a feme sole, and it is chargeable and bound for the payment of all debts contracted by her that may be secured by promissory note, or other undertaking in writing, to pay the same, whether said note is given by her alone, or jointly with others; she being the sole and exclusive owner of the property, she holds it with all the incidents of property, the right of selling, giving, or charging it with the payment of debts." In some of the cases cited, the contract of the wife was that of a security for her husband, and she was held liable where there was no fraud or undue influence.

But it is insisted that this Court has laid down a different rule as to the ability of the wife to bind her separate estate for the payment of the debts of her husband; in Kempton v. Halowell & Company, 24 Georgia, 52; Hicks, trustee, v. Johnson, 24 Georgia, 194, and in Keaton v. Scott, 25 Georgia, 652. I think not. In all these cases the property was given and secured to the wife by deed or will, and it was expressly provided in the instrument, that it should in no case be subject to the debts of the husband, and the Court held that her power of alienation was restricted by the donor in the instrument by which she acquired it; and that she could not, on that account, bind it for the payment of her husband's debt, that being the very thing to which the restriction related. This amounts, however, only to an exception to the general rule, and is not the rule itself. The rule is, that the feme covert is a feme sole as to her separate estate, with full power of alienation or disposition at her pleasure. The exception is, that if the donor has restricted the power of alienation or *disposition, she is bound by such restriction, and can not directly or indirectly alienate or bind it. in violation of the restriction placed upon it by the donor. The decisions last referred to, do not, therefore,

change the general rule as it existed when they were pronounced and continued to exist, till the adoption of the Code.

But it is insisted that, under the Act of 1851, the separate' estate which the feme covert acquires by her own exertions, during the separation from her husband, is in like manner restricted by the Act itself, and that she can not, under that Act, bind any of her separate estate by any contract to pay any debt of her husband. And this, if I correctly understand the case, is the point of difference between the different members of the Court. The Act is in these words: "That in all cases where a married woman has been deserted by her husband, and has, while so deserted, by her exertions, or those of her children, or otherwise, acquired property of any kind, the same shall be exempt from the payment of said husband's debts, and be vested in' said married woman for her sole and separate use, not subject to the debts, contracts or control of said husband." It is insisted that the legislature puts the same restriction on the wife's power to alienate or bind her separate estate, made during the desertion by the husband, that the will or deed does, in the cases which have been before this Court, and that by analogy to those decisions, she is prohibited from binding her estate so made, for the payment of any debt of the husband.

The distinction between the two cases, is, to my mind, very clear. In the one case, she does not make the property. It is given her by will or deed, and the donor, who did make it, and was the owner when the will or deed was made, had the undoubted right to make the gift, on such condition or with such qualification or restriction imposed as he might think proper to prescribe. In the other case, the legislature was not the owner of the property, not the donor, and could properly place no condition or qualification on the use of that which it did not give. The Act of 1851 gives the wife, whose husband has deserted her, no property. It simply *directs in such case, that what she acquires by her own exertions, or those of her children, or otherwise, shall be exempt from the payment of said husband's debts, and shall be vested in her, for her sole and separate use, not subject to the debts, contracts or control of her said husband. There is some tautology in the Act. It first exempts the property from the payment of the husband's debts, and vests it in the wife for her sole and separate use; and then, again, declares that it is not subject to the debts, contracts or control of the husband. This repetition of the same idea, adds neither strength to the legal effect nor grammatical accuracy to the sentence. The meaning is, simply, that the property is vested in the wife for her sole and separate use, free from the debts or control of the husband. Such was always the legal status of the wife's separate estate, and she

was always held to be a feme sole as to such separate estate, with power to dispose of it at her pleasure, and to bind it, by her own contracts, for the debts of her husband, when there was no fraud or undue influence.

The Act of 1851 makes the property acquired by the wife, during the separation, her separate property, free from the debts or control of her husband, as all other separate property was, before its passage. It puts no restrictions or conditions on the separate property of the wife, which did not exist by law, before its passage; nor was it intended to alter the law in that respect. It simply gives her power to hold as her separate property, what she acquires during the separation, which, as the law then stood, went to her husband. In other words, it enlarges her separate estate, but it makes no change in the law as to her power over her separate estate. It declares it to be vested in her, for her sole and separate use, free from the husband's debts or control. The separate estate of the wife was always vested in her, in the same way, and was always exempt from the husband's debts, unless it was otherwise provided in the instrument creating it. The very fact that it is a separate estate, necessarily includes the idea, that it is to her sole and separate use. And the fact that it is held by the wife to her sole and separate use, excludes *the idea, that it is subject to the husband's debts, or to the debts of any one but the owner, unless she, by her contract, agrees so to bind it. And the fact that it is hers, and that she is, as to it, a feme sole, necessarily implies that she may, by her contract, convey or bind it, unless there is some positive legal restriction on her power of alienation. This Act, in my judgment, simply intends to protect the wife in the enjoyment of the property acquired by her, during the separation from her husband, against the creditors of her husband, and against his own right to take it from her, or to bind it by his contracts. But it does not deny to her the power to bind it, by any contract she may make. And if she, for a valuable consideration, contracts to pay his debt out of her property, there is nothing in the Act of 1851 which interfers with her power or right to do so.

In this case, the creditor of the husband was proceeding with an attachment against his property in her possession, of which it is, I think, fair to presume, she had the benefit. To stop the proceeding by attachment, she gave this note, and I am satisfied the contract was founded upon a valuable consideration, that she had power to make it, and that she is bound by it. And I am further of the opinion, that any or all her separate estate is subject to the execution when obtained, except such as may have been given or granted to her, by deed or will, subject to such conditions, or restrictions imposed by the donor, as protect it under the former rulings of this Court, to which I have referred in this opin-

Clark & Grubb v. Valentino

ion. I will remark in conclusion, that we have gone farther than it was necessary to go, to decide the case made by this record. When we entered into the discussion of the question of the liability of any particular species of separate estate, to the payment of this debt. But we have been induced to do so by the solicitation of the counsel, and by the range taken in the argument of the case. The only question necessary to be decided, is, were the plaintiffs entitled to a judgment upon this note? How they are to make their money after they have obtained the judgment is an after consideration.

I hold that the plaintiffs are entitled upon the case made, *to a judgment against the defendant, for the amount of the note, to be levied when obtained, upon such property, if any, as may be found subject.

Judgment reversed.

WARNER, J., concurred, but wrote no opinion.

McCAY, J., dissenting.

A married woman, though deserted by her husband, is still a married woman, and though, under our law, she may sue and be sued, and make contracts as a feme sole, still any property she may, in any manner acquire, is "separate property." And under the 1773d section of the Code, she cannot bind her separate estate by any "assumption of the debts of her husband."

It is said, however, that this contract was made before the adoption of the Code. And this is true. But what was the law before the Code? The Act of 1851 provides that if the husband desert the wife, any earnings she may accumulate, or any property she may acquire, in any way, shall be her separate estate, and be to her sole use, "not subject to the debts, contracts or control of her husband."

This Court, in 25th Georgia, 654, in the case of Keaton v. Scott, and in Kempton v. Halowell, 24th Georgia, 56, and in Hicks v. Johnson, 24th Georgia, 194, has decided that property settled to the "sole use of the wife, not to be subject to the debts of the husband," cannot, even by the agreement of the wife to pay such debts, be made liable therefor.

I am unable to see how certain words in a deed shall be held to mean one thing, and precisely the same words in a statute shall be held to mean another thing. If property, settled by deed to the sole use of a wife, "not to be subject to her husband's debts," be beyond her power of disposal, so as to charge it by her agreement, with her husband's debts, I do not see why the Act of 1851, which declares any property acquired by her, during his desertion, shall be vested to her sole use, "not subject to her husband's debts," does not also *restrict her disposition of it, to the same extent. And more especially is this true, if we consider that the Legislature, in 1863, by the Code, has de-

clared that to be the public policy and law of the State, in all cases of separate estate in the wife.

The Court, in the 24th and 25th Georgia Reports, proceed upon the ground that the meaning of the words, "to her separate use, not be subject to her husband's debts," necessarily requires the construction of them insisted upon in those cases. If that be so, the meaning of the words in the statute requires the same construction. The Legislature has just as much power to restrict as the maker of a deed; the only question in those cases was, did the grantor, by the words used, so restrict? It seems to me that the same answer must be given in both cases. Moreover, this is the natural meaning.

The property is said, by the Act, to be "to her sole use and benefit." This made it hers; this deprived the husband and his creditors of all power over it. Why add other words? Why say "not to be subject to his debts?" In the cases I have referred to, this Court say these words restrict her use of it, so that she cannot, even by her express agreement, charge it with his debts. The construction put upon these words in the Act of 1851, by the majority of the Court seems to me to make the words "not to be subject to his debts," useless tautology, since the other words, "to her sole and separate use," fully and legally convey all the meaning it is assumed was intended. I think these words mean something in the statute as well as in a deed.

It is not pretended that this judgment will bind the property in Mr. Fitch's hands, as trustee. To bind that, proceedings must be had against him, and even then her right to bind it by her contract, will depend entirely upon the terms of the deed. For these reasons, I dissent from the judgment of the Court in this case.