LYON (PECKHAM v.). See Case No. 10,899.

LYON (UNITED STATES v.). See Cases Nos. 15,650 and 15,651.

---

## Case No. 8,649.

### In re LYONS.

[2 Sawy. 524; [1] 19 Int. Rev. Rec. 78; 1 Am. Law T. Rep. (N. S.) 167; 1 Cent. Law J. 137.]

District Court, D. California. Jan. 29, 1874.

MARRIED WOMEN ADJUDGED BANKRUPT.

By the laws of California a married woman living separate and apart from her husband is liable to suit on indebtedness contracted by her while so living. She may therefore be adjudged a bankrupt.

[Cited in Kinney v. Sharvey, 48 Minn. 96, 50 N. W. 1025.]

[See note at end of case.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[In the matter of Julia Lyons, a bankrupt.]

W. H. Fifield, for petitioning creditor.
Whitney & Naphtaly, for respondents.

HOFFMAN, District Judge. The question raised by the demurrer in this case is whether the respondent, being a married woman, is liable on a contract to pay rent, and if she has committed an act of bankruptcy, can be adjudged bankrupt. It appears that the husband of the respondent has long since renounced and abandoned all his marital rights and duties. For twelve years Mrs. Lyons has lived separate, and apart from him, supporting herself and her minor children by her own exertions. In the course of her business as keeper of a lodging-house, she has contracted an indebtedness for rent, and being so indebted, and in contemplation of bankruptcy and insolvency, has made, as is alleged, an assignment of her property, in fraud of the bankrupt act [of 1867 (14 Stat. 517)].

It is urged by the respondent's counsel that the contract of a married woman for the payment of money is void, and that the petitioning creditor has no debt which the court can recognize. On this point numerous authorities are cited. But as they, for the most part, are decisions under the act of April 17, 1850 [St. Cal. 1850, p. 254], and the amended act of May 12, 1862 [St. Cal. 1862, p. 518], no examination of them is necessary. The decision of the question before us turns upon the force and effect to be given to the act of March 9, 1870 (Laws 1870, p. 226). The first three sections of that act are as follows: Section 1: "The earnings of the wife shall not be liable for the debts of the husband." Section 2: "The earnings and accumulations of the wife and her minor children living with her, or being in her custody, while the wife is living separate and apart from her husband, shall be the separate property of the wife." Section 3: "The wife, while living separate and apart from her husband, shall have the sole and exclusive control of her separate property, and may sue and be sued without joining her husband, and may avail herself of, and be subject to, all legal process in all actions, including actions concerning her real estate." The fourth section prescribes the mode in which she may convey her real estate.

The object of these enactments is apparent. It was to secure to the wife, when abandoned by her husband, the fruits of her own industry, and to enable her to support herself and children out of her earnings and accumulations, free from his interference or molestation. For this purpose her earnings and accumulations, which at common law belonged to her husband, are declared her separate property, and her rights in respect of such property are carefully defined. She is to have the sole and exclusive control of it; she may separately sue or be sued, and may avail herself of, and be subject to, all legal process in all actions.

That the principal intention of the legislature was to protect deserted wives in their just rights, and not to impose upon them additional liabilities, is admitted. For this purpose they were placed in the position of quasi femmes sole, and were granted all the powers necessary to enable them to earn their own livelihood, and to retain and enjoy the fruits of their industry.

But to accomplish this object, it was evidently necessary to create new liabilities, as well as to confer new rights. The capacity to sue for moneys earned by or due to her was clearly indispensable to enable the wife to attain the object contemplated by the law. Justice and reason, and even her own interests, demanded that she should herself be liable for all debts contracted by her. For, without such liability, how could she obtain the credits usually necessary in the conduct of any business, and what could be said of the morality of a law which should announce to a woman that for all debts and demands due to her she shall have the right to sue and enforce payment, but as to debts due by her she may plead her coverture as a conclusive bar to the action.

The separate property of a married woman has, on general principles of equity, been held liable for debts contracted in respect to it, or in and about its management and improvement. The act of 1870 created a new species of separate property in the earnings and accumulations of the wife, while separated from her husband.

The equitable principles already adopted by the courts, and usually enforced by statute, required that this new species of separate property should be liable for debts incurred in its creation or management, and in the course of the business, the proceeds of which the statute enables the wife exclusively to enjoy. Further discussion, however, is needless, as the language of the act is too explicit to be mistaken. It enacts that the wife separated from the husband "may sue and be sued, and that she shall be subject to all legal process in all actions." This language is obviously inconsistent with any exemption from liability to suit for a just debt on the pretext that, being a married woman, her contracts for the payment of money are void.

The respondent being thus found to have incurred a valid indebtedness and a liability to be sued therefor, as if a femme sole, she may, if she has committed an act of bankruptcy, be adjudged a bankrupt. Hil. Bankr. p. 49; Avery & H. Bankr. pp. 33, 34; In re Kinkead [Case No. 7,824].

The demurrer is overruled, and the respondent allowed ten days to answer the petition.

2 [NOTE. Whether a married woman may be proceeded against under the bankrupt act would seem to depend in each particular case upon her

power of making contracts or of engaging in trade or other business independently of her husband. The general rule of the common law is that a married woman possesses no such power, but that, if she enters into contracts or engages in trade or other business with her husband's consent or ratification, she acts simply as his agent; and hence that the fruits of such contracts or the accumulations of such trade or business belong to him, and not to her. Bish. Mar. Wom. § 733; Switzer v. Valentine, 4 Duer, 96; Jenkins v. Flinn, 37 Ind. 349. Wherever this rule of the common law obtains in full force, it is clear that she cannot be adjudged a bankrupt. In re Goodman [Case No. 5,540].

[But this rule admits of exceptions, and these may be arranged into two classes: (1) Exceptions created by local custom or by local law; (2) exceptions growing out of a temporary cessation of the coverture.

[Under the first of these exceptions, is the case, of frequent occurrence in the English books, where a married woman acts as a sole trader, according to the custom of London. Ex parte Carrington, 1 Atk. 206; Lavie v. Phillips, 3 Burrows, 1776, 1 W. Bl. 570. See also, in Pennsylvania, Burke v. Winkle, 2 Serg. & R. 189; in South Carolina, Newbiggin v. Pillans, 2 Bay, 162; in Louisiana, Christensen v. Stumpf, 16 La. Ann. 50; Spalding v. Godard, 15 La. Ann. 277; Bowles v. Turner, Id. 352; in California, Melcher v. Kuhland, 22 Cal. 522; Abrams v. Howard, 23 Cal. 388. Under the same head would fall those cases like Jenkins v. Flinn, supra, where, by statute in particular states, a married woman may, under certain circumstances, contract liabilities, carry on business, and sue and be sued independently of her husband, and as a femme sole. In these cases there would seem to be no doubt that she is amenable to the bankrupt law; as in New York, In re O'Brien [Case No. 10,397]; Graham v. Starks [Id. 5,676]; or in Illinois, In re Kinkead [supra]. Thus, it was held in the last case in the United States district court at Chicago, by Blodgett, J., that, where a husband and wife carried on a business in partnership, their status was such, under the statutes of Illinois relating to married women, that the firm might be proceeded against in bankruptcy, and hence that the partnership creditors were entitled to a preference, in the distribution of the assets, over a creditor of the husband whose demand had accrued prior to the organization of the firm. And it was intimated that the wife would be separately adjudicated a bankrupt if it should be found necessary in the course of the proceeding to do so, in order to reach any individual property she might have. In the case of In re Goodman [supra], determined in the United States district court for Indiana, before Gresham, J., the principle above stated is fully recognized; but when applied with reference to the statutes of Indiana relating to married women, as interpreted by the supreme court of that state, the case resulted in the dismissal of the petition. It was found under the Indiana statutes, as expounded by the state supreme court: (1) That a married woman cannot engage in any kind of trade or business on her own account unless she have separate property; (2) that if a married woman, not having separate property or means of her own, engage in and carry on business, the profits, if any there be, belong to the husband as the earnings of the wife; and (3) that a married woman in Indiana, possessed of no separate estate, is relieved of none of the disabilities imposed upon her by the common law. The petition failed to show that Mrs. Goodman was possessed of any separate property or means with which she was carrying on her business, and it was held to follow that she could not be adjudged a bankrupt. So in the case of In re Slichter [Case No. 12,943], in Minnesota, where the statute allows a married woman, under certain circumstances, to engage in trade in her own name, upon obtaining a

license from a probate justice, in which case the business and profits become her separate property, and she is bound by her contracts as a femme sole, Nelson, district judge, held that a married woman, who had been engaged in business as a member of a partnership firm, but without complying with the statute, could avail herself of the plea of coverture to defeat the bankruptcy proceedings against her.

[Under the second head, which embraces the question whether a married woman may be adjudged a bankrupt where the marriage relation has been temporarily interrupted, the books furnish many instructive decisions defining the circumstances under which, independently of local custom or statute, a married woman may be separately sued. These decisions embrace cases where a married woman lives apart from her husband on a separate maintenance, in which case it has been held and afterwards denied, in England, that the wife may be sued at law as a femme sole. Corbett v. Poelnitz, 1 Term R. 5. Contra, Compton v. Collinson, 1 H. Bl. 350; Clayton v. Adams, 6 Term R. 604; Marshall v. Rutton, 8 Term R. 545. And Chancellor Kent states (2 Comm. 161) that the rule of Corbett v. Poelnitz has never been adopted in this country. It has also been held in England that a wife may be sued at law whose husband is an absent alien enemy, and is under an absolute disability of returning (Derry v. Duchess of Mazarine, 1 Ld. Raym. 147); or where he had been transported (Sparrow v. Carruthers, Coke, Bankr. Law, 29); or had been banished or had abjured the realm (Lady Belknap v. Weyland, 1 Co. Litt. 132b, 133a). So it has been held in Massachusetts that a married woman who had been divorced a mensa et thoro might sue and be sued as a femme sole in respect of property acquired or debts contracted by her subsequently to the divorce. Dean v. Richmond, 5 Pick. 461; Pierce v. Burnham, 4 Metc. [Mass.] 303. And it has been held in the same state that a femme covert, whose husband had deserted her in a foreign country, and who had thereafter maintained herself as a single woman, and for five years had lived in that commonwealth, the husband being a foreigner, and having never been within the United States, was competent to sue and be sued as a femme sole. Gregory v. Paul, 15 Mass. 31. And the question is now said to be settled in Massachusetts, as a necessary exception to the rule of the common law, placing a married woman under a disability to contract or maintain a suit, that where the husband was never within the commonwealth, or has gone beyond its jurisdiction, has wholly renounced his marital rights and duties, and deserted his wife, she may make and take contracts, and sue and be sued in her own name, as a femme sole. "It is," said Shaw, C. J., "an application of an old rule of the common law, which took away the disability of coverture where the husband was exiled or had abjured the realm." Gregory v. Pierce, 4 Metc. [Mass.] 478. And, within the meaning of this principle, the residence of the husband within another of the United States is held to be equivalent to his residence in a foreign state. Abbot v. Bayley, 6 Pick. 89. "But," said Shaw, Ch. J., in Gregory v. Pierce, supra, "to accomplish this change in the civil relations of the wife, the desertion by the husband must be absolute and complete: it must be a voluntary separation from and abandonment of the wife, embracing both the fact and intent of the husband to renounce de facto, as far as he can do it, the marital relation, and leave his wife to act as a femme sole. Such is the renunciation, coupled with a continued absence in a foreign state or country, which is held to operate like an abjuration of the realm."

[In Love v. Moynehan, 16 Ill. 277, 282, the supreme court of Illinois, after reviewing many modern cases, hold the law to be "that where the husband compels the wife to live separate from him, either by abandoning her or by for-

cing her, by whatever means, to leave him, and such separation is not merely temporary and capricious, but permanent and without expectation of again living together, and the wife is unprovided for by the husband in such manner as is suited to their circumstances and condition in life, she may acquire property, control her person and acquisitions, and contract, sue and be sued in relation to them as a feme sole, during the continuance of such condition."

[So it has been held in a recent case in Georgia that, on general principles, a married woman, whose husband has deserted her and resided in another state, has the right to contract and be contracted with, to sue and be sued, as if sole. Clarke v. Valentino, 41 Ga. 143. See, also, as supporting the same view, the following cases: Rhea v. Rhermer, 1 Pet. [26 U. S.] 105; Cornwall v. Hoyt, 7 Conn. 427; Arthur v. Broadnax, 3 Ala. 557; James v. Stewart, 9 Ala. 855; Roland v. Logan, 18 Ala. 307; Rose v Bates, 12 Mo. 47; Starrett v. Wynn, 17 Serg. & R. 130; Bean v. Morgan, 4 McCord, 148; Valentine v. Ford, 2 Browne (Pa.) 193. It would seem to follow by reasonable analogy that where a married woman is, for any such reason, liable to be sued as if sole, at least in an action at law, she may, if otherwise amenable to the provisions of the bankrupt act, be proceeded against thereunder. Accordingly, it was held in England, in Ex parte Franks, 7 Bing. 762, that the wife of a convict sentenced to transportation was liable to be made a bankrupt, she having become a trader, although her husband had not been sent out of England. The sentence of transportation against her husband rendered her liable to suit generally; and the fact that she had become a trader brought her within the provisions of the English bankrupt law.] [2]