## Phelps v. Walther et al., *Appellants*.

**Married Woman, Abandoned by Husband, may sue alone.** A married woman may sue as a *femme sole*, in all cases where her husband has abandoned or deserted her, and taken up his abode in another state or jurisdiction. This was the rule of the common law, and the statute has not changed it. 2 Wag. Stat., 1001, § 8; R. S. 1879, § 3468.

*Appeal from Cole Circuit Court.*—Hon. E. L. Edwards, Judge.

Affirmed.

*Belch & Silver* for appellants.

*White & Lumpkin* for respondent.

Martin, C.—On the 12th day of November, 1878, the plaintiff brought suit against the defendants for a trespass upon her premises in her actual possession and occupation, wherein she alleges that defendants wrongfully entered upon said premises and into the dwelling and out-buildings thereof, and took from her possession and control 210 bushels of wheat; locked up all of her out-houses containing her farming utensils and thirty bushels of shelled oats; prevented her from selling her wheat or sowing her land with it; prevented her from selling or using her corn in the field; by reason whereof she was damaged in the sum

of $500, for which she asks judgment. In answer to this suit, the defendants filed a general denial, and in addition averred that the plaintiff was a married woman and as such has no cause of action against them. To this special defense the plaintiff replied, admitting that she was a married woman, and averring that the suit was for and on account of her separate property, and that her husband "before the commencement of this suit abandoned her, and separated himself from her, and still is separated from her, and is away from her, residing outside of this State, and has become a non-resident of this State ever since his said separation from her, and she has no means of procuring him to join with her in this action."

At the trial the plaintiff gave evidence tending to prove all the issues on her part, at the close of which the defendants interposed a demurrer to the evidence, which was overruled. The defendants then submitted evidence tending to prove the issues on their part. At the termination of the evidence, the court, at the instance of plaintiff and of its own motion, gave an instruction bearing upon the right of the plaintiff to sue as a *femme sole*, to the following effect: "The jury are instructed that if they believe from the evidence that plaintiff was, at the time of the institution of this action, a married woman, and has continued to be a married woman since its institution, then the plaintiff has no legal capacity to sue, and they will find for defendant, unless the jury further find that said Phelps had abandoned his wife and left the State." As the principal question in the case concerns the validity of this instruction, the other instructions relating to the trespass need not be set out in full. The jury returned a verdict in favor of plaintiff for $166.50, from which defendants have appealed to this court.

I. It was a general rule at common law that the husband of a married woman had to join with her in all actions prosecuted in her behalf. But this rule had a few exceptions as well recognized and established at common law as the rule itself. Lord Coke in his commentaries remarks:

21—78

"A wife is disabled to sue without her husband as much as a monke is without his sovereign. And yet we read in books that in some cases a wife has had abilitie to sue and be sued without her husband, for the wife of Sir Robert Belknap, one of the justices of the court of common pleas, who was exiled or banished beyond sea, did sue a writ in her own name without her husband, he being alive." Co. Litt. 132. This case of the wife of Sir Robert Belknap is reported in the reign of Henry the Fourth. Lord Coke informs us that he made search for a precedent to warrant the case, and ascertained that a similar judgment had been rendered in the reign of Edward the First, in the case of the wife of Thomas Weyland, who had been abjured the realm for felony, from which, he adds, " it plainly appeareth, that this opinion, concerning the ability of the wife of a man abjured or banished was not first hatched by the judges in Henry the Fourth's time." Co. Litt. 133. Conceding the exceptions, he states it as follows: "And so it is, if by act of parliament the husband be attainted of treason or felony, and saving his life is banished forever, as Belknap was, this is a civil death, and the wife may sue as a *femme sole*." Co. Litt. 133. He seems to confine the exception to persons banished forever. But the cases in Viner's Abridgment support the exception in cases of exile or banishment for a limited time, and also where he was an alien beyond sea. 4 Viner Abr., 151, 152. Blackstone records the exception : " There is indeed, one case where the wife shall sue and be sued as a *femme sole*, viz : where the husband has abjured the realm or is banished, for then he is dead in law ; and the husband being thus disabled to sue for or defend the wife, it would be most unreasonable if she had no remedy or could make no defense at all." 1 Blackstone Com., 443. An abjuration of the realm was equivalent in some respects to a divorce between husband and wife, (Co. Litt. 133,) remitting her to the rights and liabilities of a *femme sole*.

II. Of course this long established exception to the rule of joinder in actions by married women, could not be

literally applied in this country under the same conditions in which it originated and was recognized in England. No abjuration or exile from our territory is known to our laws —certainly not under civil rule. It was not these things, but the effect of these things, which gave rise to the exception in England. Now, it is evident that so far as the rights and liabilities of the wife are concerned, she is left substantially in the same condition, when her husband voluntarily deserts her and takes up his abode in another state or jurisdiction, as if he had been sent there by either legislative or judicial banishment. Accordingly the exception has been applied in this country in all cases in which the husband has abandoned or deserted his wife and accepted an abode or residence in another state or jurisdiction. *Abbot v. Bayley*, 6 Pick. 89; *Gregory v. Peirce*, 4 Met. 478; *Gregory v. Paul*, 15 Mass. 31; *Beane v. Morgan*, 4 McCord 148; *Rhea v. Rhenner*, 1 Pet. 100; *Cornwall v. Hoyt*, 7 Conn. 427; *Clark v. Valentine*, 41 Ga. 143; *Love v. Moynehan*, 16 Ill. 277; *Roland v. Logan*, 18 Ala. 307; *Osborn v. Nelson*, 59 Barb. 375. In the application of this exception the states are regarded as foreign and separate jurisdictions.

III. The doctrine of this exception has been accepted and approved in this State from a very early date. *Rose v. Bates*, 12 Mo. 33; *Zallagher v. Delargy*, 57 Mo. 37; *Musick v. Dodson*, 76 Mo. 624; *Danner v. Berthold*, 11 Mo. App. 351. The case of *Chouteau v. Merry*, 3 Mo. 254, is an authority somewhat in conflict with the doctrine, but it does not seem to have been cited or recognized as such by either court or counsel in any of the subsequent cases which have established the exception in this State beyond all question.

IV. But it is maintained by the counsel for appellant, in an able and ingenious brief, that whatever may have been the rule in this State at common law, it has been modified and changed by our Practice Act, which reads as follows: "When a married woman is a party, her husband must be joined with her in all actions except those in which

the husband is plaintiff only and the wife defendant only,
or the wife plaintiff and the husband defendant; and in
all such actions where the husband is plaintiff and the wife
defendant, or the wife plaintiff and the husband defendant,
it shall be lawful for the wife to sue or defend by her agent
or attorney, as she may think proper, and in all actions by
husband and wife, or against husband and wife, they may
prosecute the same by attorney, or they, or either, may
defend by attorney; but it shall not be necessary for the
wife in any such case to sue with her husband by next
friend, or to appear and defend by next friend." 2 Wag.
St., 1001, § 8.

It is argued that by virtue of this section the husband
must be joined with the wife in all cases in which she is
plaintiff, except when she sues her husband. It is con-
tended that the legislature having enacted a general rule
and marked an exception to it, impliedly repealed all other
exceptions, and forbade the courts to engraft any others
upon it. There is an apparent plausibility in this argu-
ment, which perhaps derives some support from the form
and language of the provision, which first appeared in our
Session Acts in 1868. But when we come to interpret it,
as we must, in the light of the common and statute law
theretofore existing, its true meaning and import will not
be found in such a construction. The provision in our
Practice Act which this section took the place of, reads as
follows: "When a married woman is a party her husband
must be joined with her, except that: First, when the
action concerns her separate property, she may sue and be
sued alone; second, when an action is between herself and
her husband, she may sue and be sued alone. But when
her husband cannot be joined with her, as herein provided,
she shall prosecute or defend by her next friend." This
provision came in with our new Practice Act, and will be
found in the revision of 1855. R. S. 1855, p. 1018, § 7. It
will be observed that the act of 1868 under which this suit
was brought, and which appears in our present revision of

1879, embraces in substance the provision of 1855, without the exception relating to her separate property, and without the words requiring her to sue or appear by next friend, but enabling her to appear and defend by attorney in like manner as a *femme sole*. 1 R. S. 1879, § 3468.

What this section of 1868 declares about the joinder of the husband is in effect nothing more than the general rule of the common law, which required the husband to be joined with the wife as plaintiff, when she prosecuted a suit in her own behalf. But of course this rule could not apply to a case in which the suit was against the husband by the wife. To require him to join in such a case would have been equivalent to denying her the right to sue him at all; for it is not reasonable to suppose he would consent to a *bona fide* suit against himself, or that he could assist her in such a prosecution. No cultivated system of jurisprudence could tolerate the absurdity of a man suing himself. If there was no allusion at all to suits between husband and wife, the general rule of joinder as sanctioned by this section would not apply to suits between husband and wife. Indeed the previous provision in the revision of 1855 recognized expressly that the husband could not " be joined with her" in such actions. What, therefore, appears in form to be an exception to the general rule of joinder, is in reality no exception at all to that rule. It never did apply to suits between husband and wife, and it never could apply to such cases at law or in equity. It was unnecessary, therefore, to mention them as an exception to a rule which never covered and never could cover them without rendering them impossible.

The object of the section in mentioning suits between wife and husband was not to enact an exception in this respect to the general rule of joinder, which was unnecessary, but to recognize a distinct class of cases to which the rule never did and never could apply, and to enable the wife in such cases to sue and appear by attorney or agent instead of next friend, as in the revisions of 1855 and 1865.

The section, as it now stands, enacts the general rule of the common law relating to the joinder of husband with wife, and enacts no exception at all to that rule. As to the cases covered by the general rule, it is silent as to those excepted by the common law, as where the husband has deserted his wife and become a non-resident. There being no allusion to this exception and no enactment of any other exception, the argument that the exception in controversy has been impliedly repealed, falls to the ground. The general rule of joinder is restored as it existed at common law, when the suit of *Rose v. Bates* was commenced in 1842, and the exception which then existed as certainly as the rule itself is not repealed either expressly or impliedly. Indeed, the necessity and justice of the exception constitute an unanswerable argument against any repeal or abrogation of it by implication alone. It is unreasonable to presume that the legislature by restoring the general rule of justice, as it existed at common law, intended to deny the remedy and redress of a beneficent exception equally well established at common law. Surely the law will not withdraw its protection from a deserted wife for no other reason than that her husband has abandoned her and will not come into court with her to ask for redress! The very helplessness of her condition ought to lend favor and puissance to her cause.

V. I will be pardoned for referring in this connection to a construction placed upon our statute of conveyances which goes strongly to support the exception to our Practice Act, upheld by us in this case. It is provided in sections 669, 670, that a married woman can convey her real estate by joining with her husband in the deed or power of attorney containing the conveyance. 1 R. S. 1879, §§ 669, 670. This is in the nature of an enabling statute, and no exception is mentioned or intimated. Yet it has been held that a married woman whose husband was an alien residing in a foreign country, could make a deed without joining with her husband in the act. *Zallagher v. Delargy*, 57 Mo. 37.

This exception has been regarded and treated in the cases as resting upon the same grounds which support the exception allowing her to sue without joining her husband when he has abandoned her, and is outside of the jurisdiction. *Musick v. Dodson, supra;* 16 Cent. L. J. 229.

VI. I do not deem it necessary in this case to review the instructions relating to the trespass in detail. The judgment is so moderate that I am satisfied they placed the issues fairly before the jury.

The plaintiff has filed during pendency of this appeal, a copy of a record showing that since the judgment below she has obtained a decree of divorce. In view of what we have decided it is unnecessary for us to consider the retrospective effect of this decree upon the case. It will make it safe for the defendants to pay the judgment recovered against them.

The judgment is affirmed. WINSLOW, C., concurs; PHILIPS, C., absent.