Gallagher, et al. v. Delargy.

————o————

JOHN GALLAGHER, *et al.*, Respondents, *vs.* JAMES DELARGY, Appellant.

1. *Scire facias—Suit must be revived when—Construction of statute.*—The true intent and meaning of § 6 of the act touching the abatement and revival of suit, is that the suit must be revived on or before the third term, after the term at which the suggestion of death is made. In making the computation the term at which the death is suggested, must be excluded.

Gallagher, et al. v. Dalargy.

2. *Lease—Subscribing witness—Proof of handwriting, etc.*—In suit by the maker against the other party to a lease, proof of the handwriting of a subscribing witness, then dead, and of the identity of the defendant with the person named in the instrument, is sufficient to render the deed admissible in evidence.

3. *Married woman—Power to convey where husband lives abroad.*—Where the husband is an alien, always residing beyond the realm, the wife may convey her estate in the same manner as a *feme sole*.

*Appeal from St. Louis Circuit Court.*

*G. Pittman Smith and Polk & Causey,* for Appellant.

*Joseph Dickson,* for Respondents.

VORIES, Judge, delivered the opinion of the court.

This suit was brought before a justice of the peace. The action was for unlawful detainer. The complaint charges that the plaintiff on the 30th of January 1861, leased certain premises to the defendant, for the term of ten years, from the 30th of March 1861, which term had fully expired; that defendant refused to deliver possession of the premises to plaintiff although requested so to do; that he unlawfully detained the possession of the same, after demand made in writing for the possession thereof; that the monthly value of the rents and profits of the premises was twenty dollars; that plaintiff has been damaged by the detention, etc.; and the plaintiff prays judgment, etc. The action was commenced on the 19th day of May, 1871.

A judgment was rendered by the justice in favor of the plaintiff, from which judgment the defendant appealed to the St. Louis Circuit Court, where judgment was again rendered in favor of the plaintiff, from which an appeal was taken to the general term of said court.

At the October term for 1872, of the said court at general term, the death of the plaintiff was suggested of record, and on the 22nd day of January 1873, John T. Fitzwilliam, administrator of the estate of the plaintiff, entered his appearance as plaintiff in the cause.

On the 19th of March 1873, John Gallagher, Ellen Jane Duross, wife of James Duross, and John E Carey heirs of Esther Gallagher, deceased, appeared as parties plaintiff, and by leave of the court and on their motion, it was ordered by the court that a summons issue to James Delargy, defendant, notifying him that unless he appeared at the next term of the court, and within the first four days thereof, and show cause to the contrary, the suit would be revived in the name of said heirs.

The summons was served on the defendant in due time, and on the 20th day of May 1873, the defendant appeared and filed his objections to the revival of the suit in the name of said heirs, on the ground that the application had not been made in time; that the heirs should have been made parties on or before the third term of the court after the death of the . original plaintiff had been suggested—which he insisted had not been done—and also on the ground that one of the heirs had transferred his interest in the premises in controversy.

These objections were heard and overruled by the court and the action revived in the names of said heirs, to which the defendants excepted.

The court afterwards affirmed the judgment rendered at special term, and the defendant appealed to this court. On the trial before the jury in the Circuit Court, the plaintiff was examined as a witness and testified that she had owned the premises in controversy, since the year 1849 ; that in January 1861, she leased the premises to the defendant for a term of ten years, at a rent of twenty-five dollars for the term; that there was a written lease which was signed by defendant and herself ; that the lease was written by esquire McDonald, and signed in his office, and that McDonald had subscribed it as a witness. The witness produced the lease and exhibited it to the court ; she testified that at the time she purchased the land sued for she was a married woman, and continued to be such until the death of her husband about four years since ; that her husband lived in Ireland, and came over to see her once or twice, remained a short time and returned to Ireland, and

never returned ; that her husband was not in this country when the lease was executed, and has never been at any time since ; that the defendant had resided on the land and made improvements on it for two or three years before the lease was executed ; that the land was a small three square piece of land and but of small value at the time the defendant went into the possession of it.

The plaintiff then offered the lease in evidence, which was in the ordinary form and was for a term of ten years, from the 30th of March 1861, the rent for the whole term being $25.00. It purported to be signed by plaintiff and defendant, the defendant making his mark to his name, and the name of Philip McDonald subscribed thereto as a witness.

The defendant objected to the introduction of the lease in evidence, on the ground, 1st, that it was not competent evidence ; 2nd, that it was executed by a married woman without her husband joining therein, and was therefore void ; 3rd, that defendant's name was subscribed thereto, without his knowledge or consent.

These objections were overruled by the court and the lease read in evidence, and the defendant excepted.

The plaintiff then introduced a witness who testified, that he was well acquainted with Philip McDonald, had seen him write and was well acquainted with his handwriting and that his signature to the lease was in his handwriting.

The defendant offered evidence which tended to prove that he had entered into the possession of the premises sued for, under a contract of purchase from the plaintiff, some two years before the time at which the lease purported to have been executed ; that plaintiff had promised to make him a deed for the land, and that he had made valuable improvements on the premises before the date of the lease ; that he had never executed the lease or held possession under it, but had always held it under the contract of purchase, and knew nothing of the lease until this suit was brought. Several witnesses were also introduced who testified, that plaintiff had told them that she had sold the land to the defend-

ant. One of the defendant's witnesses testified that he was present when a lease was executed by plaintiff to defendant, for the land in controversy, for the term of ten years; his impression was that the lease was executed in February 1861; that the lease was executed in 'Squire McDonalds's office, was written by him and signed by plaintiff; that defendant was not present, but that his wife was, and after plaintiff signed the lease, McDonald asked defendant's wife to sign it; that she said she could not write, and McDonald then wrote her name to the lease, and defendant's wife made a cross mark to the name; that witness did not know whether the name signed was the name of defendant, or of defendant's wife. Said witness also testified that he had often heard defendant, while he resided on the land, speak of the lease, but that he claimed the land as his own; that he had never heard him deny the execution of the lease or object to it in any way; that he had spoken with witness about the lease often, after its execution. The defendant also introduced evidence impeaching the character of plaintiff, for truth and veracity. There was also evidence tending to prove that plaintiff had resided in this country for about twenty years; that she and defendant were acquainted in Ireland; that her husband remained in Ireland, never becoming a citizen of the United States; had only visited this country and remained but for a short time. The court instructed the jury as follows:

"1st. If the jury find for the plaintiff, they will assess as damages, all the rents and profits due and owing up to this time, for the premises unlawfully detained; and they will further find the monthly value of the rents and profits of said premises."

"2nd. If the jury find from the evidence that plaintiff leased the premises in question to defendant for the term of ten years, from the 30th day of March 1861, and that defendant unlawfully withholds possession of said premises, after the expiration of said lease, then they must find for the plaintiff."

The defendant objected to these instructions and excepted. The defendant then asked the court to give the jury the following instruction:

"If the jury find from the evidence that the plaintiff was a married woman when she signed the paper, purporting to be a lease, dated the 30th of January 1861, and read in evidence by her, then said instrument was not binding on the plaintiff, passed no term in the premises therein described to the defendant, and he did not thereby become the lessee from the plaintiff of said premises, and the said plaintiff is not entitled to recover in this case against this defendant."

The court refused this instruction and defendant again excepted. A motion for a new trial was filed in due time after verdict, which was overruled and exceptions taken.

The questions presented for the consideration of this court, are the following:

1st. It is insisted by the defendant, that after the death of the plaintiff was suggested in the Circuit Court, at general term, the suit was not revived in the name of the plaintiff's representatives in the time required by the Statute, and in fact it was never revived as to the administrator of the plaintiff, and that therefore the suit abated and could not be further prosecuted.

2nd. The court improperly admitted in evidence the writing purporting to be a lease of the land from plaintiff, when its execution was not properly proved, and after proof that plaintiff at the time was a married woman.

3rd. The court erred in giving and refusing instructions to the jury.

As to the first point insisted on by the defendant, it appears by the record, that after the death of the plaintiff, her administrator appeared and voluntarily entered his appearance without any notice to the defendant, but it does not appear that any formal entry was ever made reviving the action in his name, nor is any further mention made of his name in the record. The heirs of plaintiff appeared and procured a summons to be issued, notifying defendant to appear and show cause to the

contrary, or the suit would be revived in their names. Upon the hearing of this application after the summons had been served and the defendant had appeared thereto, this court made an order reviving the suit in the name of the heirs. It it objected by the defendant that the suit had, before this order of revival, abated, and that no order to revive could legally be made. The Statute provides (6th section of the Statute concerning the abatement of suits and their revival, Wagn. Stat., 1050,) that, "in all cases where the representatives of a deceased or disabled party, shall not be made parties according to the provisions of this chapter, on or before the third term after the suggestion of the death or disability, the action shall abate as to such party, and the interest of his representatives or successor therein, and the cause shall proceed in favor of or against the survivors. In case there be no surviving plaintiff or defendant, the suit shall be dismissd." It is not pretended that this suit was not revived in time, provided the term at which the suggestion of the death was made, is not counted as one of the three terms after the death is suggested, as provided in the Statute. The language of the Statute is "on or before the third term after the suggestion of the death, etc." We think that the true and clear meaning of this statute is, that the suit shall be revived on or before the third term after the term at which the suggestion of the death is made, and that in making the computation the term at which the death is suggested must be excluded. With this view of the case the revival of the suit was in time. No objection was made in the court below, as to the failure of the court to revive the suit in favor of the administrator of the plaintiff, and no evidence to sustain the allegation in defendant's objection to the revival of the suit, on the ground that one of the heirs had transferred his interest in the premises, was produced. We will therefore not notice these objections here. We do not think that the case of The State vs. Gasconade County Court, (33 Mo., 102,) is in point. The computation of time as held in that case does not conflict with the view we have taken in this case.

The next objection insisted on by the defendant is, that the court admitted the lease in evidence without sufficient proof of its execution. It is shown that the subscribing witness was dead, and proof of his handwriting was clearly made, and there was no question as to the identity of the party, and it was further testified by the plaintiff that she saw the lease executed. The rule in reference to the proof of a written instrument, where the subscribing witness is dead, as laid down by Greenleaf, is this: "When secondary evidence of the execution of the instrument is. thus rendered admissible, it will not be necessary to prove the handwriting of more than one witness. And this evidence is in general deemed sufficient to admit the instrument to be read, being accompanied with proof of the identity of the party sued, with the person who appears to have executed the instrument, which proof it seems is now deemed requisite, especially where the deed on its face excites suspicion of fraud. The instrument may also in such cases be read, upon proof of the handwriting of the obligor or party by whom it was executed, but in this case also, it is conceived that the like proof of the identity of the party should be required. If there be no subscribing witness, the instrument is sufficiently proved by any competent evidence that the signature is genuine."

The same rule is laid down by Mr. Starkie, in his work on Evidence, and almost in the same language, (1 Greenl. Ev., § 575, pp. 619, 620, and cases cited; Starkie Ev., side p. 519; Little vs. Chauvin, 1 Mo., 626; Waldo vs. Russell, 5 Mo., 387).

The next objection urged by the defendant is, that the plaintiff at the time the lease was executed was a married woman, and that therefore the lease was wholly void and ought to have been excluded from the jury as evidence in the case. The same question is also raised by the defendant in an instruction asked by him and refused by the court. The general rule very clearly is, that a married woman cannot execute a deed, by which her real estate is affected or conveyed, unless she is joined in the instrument by her husband; but

this rule like most rules has its exceptions. One of these exceptions is, that a wife may sue in her own name and alien her land, where her husband has abjured the realm, or been transported and failed to return after the time for which he was transported had expired. Chancellor Kent, in his Commentaries, states the exception to the disability of a *feme covert* in this language:

"If the husband was banished or has abjured the realm, it was an ancient and another necessary exception to the general rule to the wife's disability to contract, and she was held capable to contract, and to sue and be sued as a *feme sole*. In such case both she and her creditors would be remediless without that exception. * * * * And if the husband be an alien, always living abroad, the reason of the exception also applies, * * * * * in such case the wife was suable as a *feme sole* in like manner as if the husband had abjured the realm. (2nd Kent's Com., 154.) And in the case of Gregory vs. Paul's Exr., (15 Mass., 31) the same exception is fully maintained, and it is there held, that where a woman is separated from her husband and is maintaining herself in Massachusetts for five years, her husband remaining in a foreign country, the wife may sue in her name as a *feme sole*.

In this State, in the case of Rose vs. Bates, (12 Mo., 30.) the same exception is fully maintained. We have no statute in this State changing this rule, or which is in conflict with it. The cases referred to by the defendant in this case, do nothing more than assert the general rule, that, a married woman cannot contract in her own name unless joined by her husband, which is undisputed in ordinary cases.

The instruction asked by the defendant and refused by the court, did nothing more than to assert the general rule and was abstractly right, but it was not applicable to this case, where the evidence clearly showed that the plaintiff's husband was a foreigner, that she had resided in this State for about twenty years, that the husband had never been in the United States but once, when he came on a visit, remaining only a short time, and returned to Ireland where he re-

sided until his death, which took place only a few years be-
fore the bringing of this suit, and that the plaintiff had been
living and dealing in this State, for twenty years as a *feme
sole*. The instruction was therefore properly refused.

The instructions given by the court were substantially
correct. The second instruction would have been more sat-
isfactory if it had defined to the jury, what would amount
to an unlawful withholding of the possession of the premi-
ses. But no objection was made to the instruction on that
account, the whole case appearing to have been staked on the
unlawfulness of the lease. In fact it seems to have been con-
ceded that the holding was unlawful if the lease was valid and
properly admitted in evidence.

There were some other minor points made which were
purely technical and need not be noticed.

The other judges concurring, the judgment is affirmed.
Judge Wagner, absent.