Moses Greenabaum, *et al.*, Respondents, *vs.* Thomas T. Elliott, Adm'r of Samuel Taylor, deceased, Appellant.

1. *Promissory note—Promise and refusal to surrender after payment—Double payment of note—Action to recover back money—Res adjudicata.*—An administrator, after personal service, obtained judgment by default on a note given to the intestate, and realized the amount due, and the maker subsequently sued to recover back the money, claiming that the debt had already been paid to the deceased. The proof showed merely a promise of the latter to deliver up the note. *Held,* 1st, that the duty of surrendering it was a moral and not a legal obligation, and not a good consideration for the promise, and hence, that such agreement would not sustain the action against the administrator; 2nd, that the judgment in favor of that officer, in the suit brought by him, was *res adjudicata;* and the failure to set up therein the defense of payment conclusively barred the maker from subsequently prosecuting the claim. Such is the rule as now established in all cases, unless the party can show some ground for equitable interference.

2. *Administration—Action against estate—Limitation as to claims.*—The cause of action, against an administrator for money, alleged to have been wrongfully collected by him on a note, accrues at the date of the payment thereof. And, the statutory limitation of two years against such claims, being then in force, failure to present the claim against the estate within two years from the time of payment, will bar it, notwithstanding that the administration may have been commenced when the three years' limitation act was in operation.

### *Appeal from Chariton Circuit Court.*

*Charles A. Winslow,* for Appellant.

I. Respondents having appeared to the action on the note commenced by Dewey and failed to make the defense of payment, cannot recover back the amount they have been compelled to pay on the judgment in that case. The payment of the note to Taylor in his lifetime, if made, was a good defense to the action on the note, and being simply a defense, should have been made at the time, and not having been so made, is *res judicata.* (LeGuen vs. Gouverneur, 1 Johns. Cas., 491; also opinion of Kent., J., p. 502; White v. Ward, 9 Johns., 232; Loomis vs. Pulver, 9 Johns., 244; Walker vs. Ames, 2 Cow., 428; Binck vs. Wood, 43 Barb., 315; Freem. Judg., §§ 285–89, and notes; Cadwaleder vs. Atchison, 1 Mo., 659; Yantis vs. Burdett, 3 Mo. 457; Hackworth vs. Zollars, 30 Ia., 433; Binford vs. Kersey, 48 Miss., 643.) The

case of Whitcomb vs. Williams, (4 Pick., 228) and the few other similar cases are no longer considered good law, and have either been explained away on their peculiar facts, or squarely overruled. (Hunt vs. Johnston, 23 Mo., 432; Woodburn vs. Renshaw, 32 Mo., 202; Price vs. Cannon, 3 Mo., 453; 1 Pars. Cont., [5 ed.] 428, *et seq.* and notes.)

II. Taylor's promise to deliver the note is without any legal force whatever. The note was paid and valueless in Taylor's hands, since a good defense existed against it; and in a proper case he might have been compelled to deliver it up to be canceled. He was no longer justified in retaining it. A naked promise to do what one is compelled in law or equity to do, is without consideration and void. (Crosby vs. Wood, 2 Seld., [N. Y.] 374; Farrington vs. Bullard, 40 Barb., [N. Y.] 512; Cowper vs. Green, 7 M. & W., 641; Russell vs. Buck, 11 Vt., 166; McDonald vs. Neilson, 2 Cow., 183; Price vs. Cannon, 3 Mo., 453.)

Conceding that a moral obligation really existed, that alone will not support a promise. (Mills vs. Wyman, 3 Pick., 207; 2 Am. Lead. Cas., [4 ed.] pp. 177–80; 1 Pars. Cont., [5 ed.] 430, *et seq.* and notes; Hunt vs. Johnston, 23 Mo., 432; Woodburn vs. Renshaw, 32 Mo., 197.) But there was no moral obligation resting on Taylor at the time he made the promise, within the meaning of the authorities. That obligation came into existence only upon the alleged second payment of the money, several years after the promise. (Cook vs. Bradley, 7 Conn., 57; Smith vs. Ware, 13 Johns., 257; Bently vs. Morse, 14 Johns., 468; Edwards vs. Davis, 16 Johns., 284, note (*a.*); Stafford vs. Bacon. 1 Hill., [N. Y.] 538; Ehle vs. Judson, 24 Wend., 97; Mills vs. Wyman, *supra;* 2 Am. Lead Cas., 177–80, [4 ed.]; 1 Pars. Cont., [5 ed.] 432, *et seq.* and notes; Kennerly vs. Martin, 8 Mo., 698.)

III. The court below erred in giving and refusing instructions on the statute of limitations. The limitation of two years applied. The demand accrued when the money was paid—November 19th, 1866—and at that time the statutes

of 1865 were in force. The demand ran two full years, and seven days over, between the day it accrued and the day it was presented—that is, between November 19th, 1869, and November 25, 1871—while the two years law was in force. The revision of 1865 contains no savings by which the three years limitations was continued in force as to existing administration. (Wagn. Stat., 86, § 19 ; 102, § 2 ; Callaway County vs. Nolley, 31 Mo., 393 ; Billion vs. Walsh, 46 Mo., 492 ; Gilker vs. Brown, 47 Mo., 105.)

A literal reading of the statute would bar all demands in the time limited after the granting of the first letters, but a series of decisions in this court has settled the rule otherwise where the demand accrues after the granting of letters. The statute in such cases only commences to run from the time the demand accrues, instead of the date of the letters. (Miller vs. Woodward, 8 Mo., 169 ; Finney vs. The State, 9 Mo., 227 ; Chambers vs. Smith, 23 Mo.. 174 ; Burton vs. Rutherford, 49 Mo., 255.)

*Shackelford*, for Respondents, cited in argument, Whitcomb vs. Williams., 4 Pick., 228 ; 1 Pars. Cont., 356 ; 1 Sto. Cont., 431 ; Train vs. Gold, 5 Pick., 384 ; 8 Mo., 698 ; 49 Mo., 433.

WAGNER, Judge, delivered the opinion of the court.

This cause was originally brought in the Probate Court of Chariton county, and was presented in the shape of a demand against the estate of Samuel Taylor, deceased. There was a refusal to allow the demand in the Probate Court, and an appeal was taken to the Circuit Court. On a trial in the Circuit Court, before a jury, plaintiffs obtained a verdict and judgment for the amount claimed, and to reverse this judgment defendant has prosecuted his appeal.

The facts show, that on the 24th of March. 1863, the plaintiffs. Greenabaum, Oppenheimer and Chapman, executed their joint note to Samuel Taylor, for one thousand dollars, payable twelve months after date. The petition alleges, that in the spring of 1864, plaintiffs paid this note to Taylor. Sub-

sequent to this alleged payment Taylor died, and Dewey administered upon his estate. Among the assets that came to the hands of the administrator, was the note above mentioned, which was inventoried as a portion of the estate. Dewey, as administrator, sued the plaintiffs on the note in the Circuit Court.

The summons was served on Chapman, March 24, 1866, and the other parties were duly notified by publication, which was made returnable to the October Term, 1866. At the last named term all the defendants appeared and filed a joint answer, setting up payment of the note as their sole defense. At the same term of the court the answer was withdrawn, and judgment was rendered in favor of the administrator, for the amount of the note and interest.

Execution was issued on this judgment and levied on Chapman's land, who, on the 18th day of November, 1869, paid the amount of the judgment and costs to the sheriff. Elliott, the defendant here, succeeded Dewey as administrator, and on the 25th day of November, 1871, the plaintiffs commenced this proceeding in the Probate Court.

The gist of the action stated in the petition, is, that Taylor made a special promise, when the note was paid, to deliver the same to plaintiffs, and save them harmless from its second payment. This allegation was put in issue by the answer.

The only evidence in the record in reference to any settlement, payment or promise, is that given in the depositions of Green and Fitzpatrick, on the part of the plaintiffs. Green says, that when the settlement was made, it was with the distinct understanding that Taylor was to deliver up the old note, which was paid off, to Chapman, either that evening or at the first opportunity thereafter. Fitzpatrick testifies that he heard Taylor say after the settlement, that he would deliver the $1000 note to Chapman that evening as they went home, or that he would bring it to Chapman that evening or the next day.

It is evident that this did not constitute such a promise as would maintain an action. When the note was paid off it

was in effect destroyed; its satisfaction utterly did away with its value. Taylor had no right to hold it further, and he could not make the giving up of it the consideration of a new promise. (Cowper vs. Green, 7 M. & W., 633.) The validity and legal effect of the note were gone, and the duty of surrendering it was merely a moral one.

A moral obligation by itself, is not a good consideration for a promise. To impart to it any binding character, there must be some antecedent legal liability to which it can attach. Parsons says the rule may now be stated as follows: "A moral obligation to pay money or to perfom a duty, is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law but for the interference of some rule of law. Thus, a promise to pay a debt contracted during infancy, or barred by the statute of limitations or bankruptcy, is good, without other consideration than the previous legal obligation. But the morality of the promise, however certain or however urgent the duty, does not of itself suffice for a consideration. In fact, the rule amounts at present to little more than a permission to a party to waive certain positive rules of law which would protect him from a plaintiff claiming a just and legal debt." (1 Pars. Cont., 5 ed., 434.)

But the more conclusive and controlling proposition of law as to the plaintiffs, is, that the matter has become *res judicata*, and they are not at liberty to dispute the verity of the former judgment by which their liability was solemnly adjudged. When the administrator, Dewey, commenced the action on the note, the plaintiffs appeared in court and filed their joint answer, setting up payment as a defense. They subsequently withdrew that answer, and permitted final judgment to be taken against them. They paid the amount on execution, and they cannot now be allowed to recover it back. If the note was paid to Taylor in his life time, that payment constituted a good defense to the action, and should have been taken advantage of at the time, and the failure of the plaintiffs, when they were thus sued and in court, to make the

proper defense, conclusively bars them now from averring anything contrary to the record.

This is the recognized, and I might say, at the present time, the universal doctrine. Some of the earlier decisions in Massachusetts announced a different rule, but they cannot be supported, and are not now regarded as authority. In the case of Rowe vs. Smith, (16 Mass., 306) the plaintiff had paid $50 on a $400 note and taken a receipt. Afterwards he was sued on the $400 note, and judgment was entered against him for the whole amount. An action by the plaintiff to recover back the $50, was sustained. Parker, C. J., stated that his first impression was against the recovery, but it was finally sustained on the ground that the defendant had received $50 which he was not entitled to retain, and that he could not conscientiously be permitted to keep it.

The case of Loring vs. Mansfield, (17 Mass., 394) involves the same principle decided in Rowe v. Smith, with the difference of fact, that in the former case, the plaintiff in the second action appeared in the first and contested the recovery, but did not attempt to prove the payment for which he afterwards brought an action. The court decided, however, that he could not recover; the ground being substantially, that, having been in court, he ought to have proved his whole defense when he had an opportunity.

In neither case was there any actual trial as to the payment claimed to be recovered. This case, therefore, not only impairs the authority of Rowe vs. Smith, but in fact overrules it.

The case of Whitcomb vs. Williams, (4 Pick., 228) cited and greatly relied on by plaintiff's counsel, does not in the least aid him. The case went off on different grounds. The court say: "In this case a cause of action has been shown, independent of the judgment; nor was the proof of the judgment at all material to the merits of the case."

"There can be no doubt," says Freeman, "that th~· ~sachusetts decisions are in direct conflict with the tru~ e upon the subject, both English and American, and they were induced by yielding to the hardships of the particular cases

in which they were pronounced, and are good illustrations of the maxim, ' that hard cases make bad precedents.' " (Freem. Judg., § 286; 2 Sm. Lead. Cas., 667.) " It is clear, that if there be a *bona fide* legal process under which money is recovered, although not actually due, it cannot be recovered back, inasmuch as there must be some end to litigation." (Duke de Cadoral vs. Collins, 4 Ad. & El., 867.)

A party having found a receipt for a debt which he had been compelled to pay by judgment, having sought to recover back the money paid, Lord Kenyon, before whom the case came, said; " I am afraid of such a precedent. If this action could be maintained, I know not what cause of action could ever be at rest. After recovery by procees of law there would be no security for any person." (Marriott vs. Hampton, 7 T. R., 269.)

In the recent case of Huffer vs. Allen, (L. R., 2 Exch., 15) it was declared, that, " it was not competent for either party to an action to aver anything, either expressing or importing a contradiction to the record, which, while it stands, is, as between them, of uncontrollable verity." To the same purport are nearly all the American cases. (Tilton vs. Gordon, 1 N. H., 33; Broughton vs. McIntosh, 1 Ala., 103; Mitchell vs. Sanford, 11 *Id.*, 695; Corbet vs. Evans, 25 Penn. St., 310; Kirklan vs. Brown, 4 Humph., 174; Loomis vs. Pulver, 9 Johns., 244; Battey vs. Button, 13 Johns., 187.)

The case of Walker vs. Ames, (2 Cow., 428) was of special hardship. There had been a recovery on an account and also on a note given in settlement of the same account. The defendant in that action then sued to recover back one-half of the judgment thus improperly recovered. The court held that the action would not lie; " that there could be no end to litigation nor any security to a person," if such an action could be brought.

It may therefore be stated as the established rule, that when a defendant has been legally in court, and fails or neglects to make his defense if he has one, the judgment will be conclusive upon him, unless he can show some ground for equitable interference.

The court erred in deciding that the plaintiffs could maintain their action.

The statute of limitations was also interposed as a defense and overruled by the court. The record shows that Dewey, the original administrator, took charge of Taylor's estate January 3rd, 1866, and that on the 20th of the same month he published notice of his administration, requiring all persons having claims against the estate to exhibit them for allowance within three years. At that time three years was the limitation for allowing and classifying demands against an estate. In August, 1866, the statutes of 1865 took effect, limiting the time for allowance and classification to two years. On the 18th of November, 1869, Chapman, one of the plaintiffs to this suit, satisfied the judgment of the administrator against these plaintiffs, and at that time the cause of action, if any, accrued in their favor. The present demand was not exhibited for allowance until November 25th, 1871. It will be thus seen that more than two years had run from the time the cause of action had accrued, till it was presented. The demand accrued when the money was paid, to-wit: Nov. 18th, 1869, and at that time the two years' limitation was in force. There is no saving clause in the administration act, by which the two years' bar is excluded, where the demand accrued after it went into operation, although the administration was commenced under the three years' limitation act.

This court has held, under the limitation law in respect to real actions, that where ten years have elapsed from the taking effect of the law, the action is barred, although it first accrued under some act of limitations, which gave a longer period within which to bring it. (Calloway Co. vs. Nolley, 31 Mo., 393; Billion vs. Walsh, 46 *Id.*, 492; Gilker vs. Brown, 47 *Id.*, 105.)

The case here is stronger. The action accrued under the two years limitation, and must be governed by it, and as more than that time elapsed before it was brought, the plaintiff's claim was barred.

In any view that we can take of the case, the judgment is wrong, and it must be reversed.    The judgment is reversed; the other judges concur.