MUSICK, *Appellant*, v. DODSON.

1. **Married Woman's Promise to pay Attorney's fee for Divorce.** A promise by a married woman to pay an attorney a fee for obtaining for her a divorce from her husband, is not binding on her, and, therefore, not on a subsequent husband; neither is her affirmation of such promise after the divorce has been obtained.

2. **Married Woman's Promise:** AFFIRMATION WHEN DISCOVERT. The moral obligation resting upon a woman to make good her promise given during coverture, is not a sufficient consideration to uphold an affirmation of the promise made after she becomes discovert.

3. ——: ABANDONMENT. The abandonment of a married woman by her husband for a period of time sufficient to entitle her to a divorce, does not remove her disability to contract, unless he has gone beyond the limits of the State.

*Appeal from Adair Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Millan & Musick* for appellant.

*H. D. Risdon* for respondent.

SHERWOOD, J.—Action before a justice of the peace, based on the following statement:

" Plaintiff states that he is an attorney at law, duly licensed according to law ; that heretofore, to-wit : on the — day of ——, 1877, one Louisa Allen employed plaintiff to bring and prosecute an action for divorce from her then husband, James Allen; that the cause of said divorce was that she had been deserted by her husband for more than three years before the bringing the suit for divorce or contracting with plaintiff to bring said suit for divorce, and that plaintiff did bring said suit, and did successfully prosecute the same, and she was divorced from her said husband; that plaintiff's services therein were reasonably worth $20, which amount she agreed to pay plaintiff, before and after the divorce was granted, but which is due and unpaid;

that, afterwards, on the — day of ——, 1878, defendant Thomas Dodson, was duly and legally married to Louisa Allen, and is now her husband. Wherefore plaintiff prays judgment against said Thomas Dodson for said sum of $20 and costs."

A married woman is wholly incapable of making any contract whatsoever, which will bind her personally, or create against her a personal debt or obligation. *Bauer v. Bauer*, 40 Mo. 61; *Higgins v. Peltzer*, 49 Mo. 152. And it has been expressly decided, that a married woman's promise to pay an attorney his fee for obtaining a divorce for her, would not be binding upon her. *Whipple v. Giles*, 55 N. H. 139; *s. c.*, 2 Cent. L. Jour. 484. This being the case, the engagement made with the plaintiff by Mrs. Dodson, now wife of defendant, then wife of James Allen, to pay plaintiff, as an attorney, a certain sum for obtaining a divorce for her from Allen, cannot be regarded as a debt of the wife of Allen, and if not a personal debt of hers, then according to plaintiff's own position, the defendant could not be held legally liable for anything less than the debt of his wife, contracted anterior to his marriage with her. And if Mrs. Allen could not, during the existence of marital relations with her then husband, bind herself personally, then as a matter of course there could not be any consideration for the promise made by Mrs. Allen, after the divorce was obtained, to pay for such services, so the subsequent promise would be a mere *nudum pactum* and of no binding, obligatory or debt-creating force.

The case of *Wilson v. Burr*, 25 Wend. 386, gives support to plaintiff's position that a moral obligation on the part of a *femme covert*, is sufficient to uphold her promise, made after the removal of her disability. That case is based on *Lee v. Muggeridge*, 5 Taunt. 36, which Mr. Parsons says, " is not law." 1 Parsons Cont., 435. It was subsequently abridged and modified in *Littlefield v. Shee*, 2 B. & Ad. 811, and denied

40 - 76

in *Eastwood v. Kenyon*, 11 Ad. & El. 438, Denman, C. J. It is said by Mr. Story that where contracts are "merely voidable, and not void in their inception, they may be revived by a subsequent promise, provided they were originally founded upon an express or implied request by the party benefited. But where the promise is void *ab initio*, it is not capable of ratification. Thus, where a married woman gave a promissory note, and after her husband's death, promised, in consideration of the forbearance of the payee, to pay it, it was held that the note was absolutely void, and that forbearance where there was no cause of action originally, is not a sufficient consideration to raise a promise.    *    *    So also, where certain goods were supplied to a *femme covert*, living apart from her husband, and for which she, after his death, promised to pay, it was held that the subsequent promise was void, because the goods being supplied to her during the life of her husband, the price constituted a debt due from him and not from her." 1 Story Const., § 593, and cases cited. Mr. Baron Parke said "A mere moral consideration is nothing." *Jennings v. Brown*, 9 M. & W. 501. Chancellor Kent says that the weight of authority is opposed to the view that a mere moral obligation is of itself, a sufficient consideration for a promise except in those cases in which a prior legal obligation or consideration had once existed. 2 Kent, 465.

The doctrine of the case of *Wilson v. Burr, supra,* was departed from in the subsequent cases of *Watkins v. Halstead,* 2 Sandf. 511; *Smith v. Allen,* 1 Lansing 101, and *Geer v. Archer,* 2 Barb. 424, where that doctrine is repudiated. And before that case was adjudicated a different view of the law had been taken in *Ehle v. Judson,* 24 Wend. 97, and *Smith v. Ware,* 13 Johns. 257, which cases were not noticed in that on which plaintiff relies. The views we have expressed touching the point in hand are also supported by *Mills v. Wyman,* 3 Pick. 207, where the subject of the insufficiency of a mere moral obligation as the

basis for a subsequent promise, is very clearly and elaborately discussed, and also by numerous other cases cited in the text-books from which we have quoted.

In *Greenabaum v. Elliott*, 60 Mo. 25, Wagner, J., delivering the opinion of the court said : "A moral obligation by itself is not a good consideration for a promise.   To impart to it any binding character, there must be some antecedent legal liability to which it can attach.   Parsons says the rule may now be settled as follows :   'A moral obligation to pay money or to perform a duty, is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law before the interference of some rule of law.   Thus, a promise to pay a debt contracted during infancy, or barred by the statute of limitations or bankruptcy, is good, without other consideration than the previous legal obligation.   But the morality of the promise, however certain or however urgent the duty, does not of itself suffice for a consideration.   In fact, the rule amounts at present to little more than a permission to a party to waive certain positive rules of law which would protect him from a plaintiff claiming a just and legal debt.'    1 Parsons Cont., 434.   And the same learned author also remarks : "Perhaps an illustration of the rule, that a moral obligation does not form a valid consideration for a promise, unless the moral duty was once a legal one, may be found in the case of a widow, who promises to pay for money expended at her request or lent to her during her marriage. It has been held in England in a case examined in a former note, that this promise was binding and there are many *dicta* to that effect in this country ; but the current of recent decisions in England is in favor of the view that the promise of a married woman has not, when given, any legal force, and, therefore, is not voidable, but void, and cannot be ratified by a subsequent promise after the coverture has ceased, nor be regarded as a sufficient consideration for a new promise." Ib., 485.   And this court has

announced a similar rule in *Kennerly v. Martin*, 8 Mo. 698, where it was held that the subsequent promise of a widow to pay a physician for professional services rendered her during her coverture, was not founded upon a valuable consideration.

The case at bar is not distinguishable in principle from the last case or others cited in support of our views. The case of *Gwinn v. Simes*, 61 Mo. 335, in its result, is in accord with this one; for there the reception of the money on Sunday, constituted a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, and, therefore, the express promise, o-wit: the mortgage, revived the precedent good consideration. 3 Bos. & Pul. 249; *Geer v. Archer, supra.* It has been ruled that a wife could, by such an agreement as that on which plaintiff has declared, bind her then husband, for an attorney's fee for services rendered her in a proceeding for a divorce, instituted by her husband against her. *Porter v. Briggs*, 38 Iowa 166, and cases cited; *s. c.,* 2 Cent. L. Jour. 681. But no case has gone to the extent of holding that any subsequent husband would be bound in consequence of such an agreement, made by one who at the time of making it was the wife of another.

At the common law, if the husband had abjured the realm, or was an alien residing continuously abroad, these circumstances invested the wife with the protection and powers incident to a *femme sole. Gallagher v. Delargy,* 57 Mo. 29, and cases cited. And the same rule has been extended and applied when the husband resided without the state of the wife's residence, he having deserted her. *Abbot v. Bayley*, 6 Pick. 89; *Gregory v. Pierce*, 4 Met. 478. And the point has been ruled in the same way by this court, when the wife resided in this State, separated from her husband, who resided without the State. *Rose v. Bates*, 12 Mo. 30. But the three cases just cited were put upon the express ground of the con-

3. ——: abandonment.

tinued and intentional absence of the husband from the State, the line of jurisdiction being in a political point, an impassable barrier, and the husband being in consequence thereof, as much beyond the process and jurisdiction of the courts of the wife's residence, as if he had abjured the realm or were an alien residing abroad. This distinction is made plainly to appear in *Abbot v. Bayley, supra,* where the husband, resident in New Hampshire, by cruelty drove his wife from home, who thereupon, came to Massachusetts, resided there for many years, acting as a *femme sole,* and had received the note in question, as the proceeds of her own labor. These facts being set forth in plaintiff's reply to defendant's plea in abatement that plaintiff was under the coverture of Peter Abbot, who resided in New Hampshire, the defendant rejoined that the husband was a citizen of the United States, residing therein, and had not at any time renounced or abjured his allegiance thereto, etc., etc. A demurrer was interposed to this rejoinder, and Parker, C. J., discussing this point said: "The question is, whether the replication is an answer to the plea in abatement of coverture of the plaintiff. If these parties to the marriage lived within this commonwealth, it is certain that the facts stated in the replication would not avoid the plea of coverture, for by the plaintiff's expulsion from the house of her husband, she would have carried with her a credit against him to the extent of her necessary support, and furthermore, might have obtained a divorce *a mensa et tharo,* and a reasonable alimony out of his estate." And the rejoinder was adjudged bad.

No such case is presented by this record. Nor does the case of *Gallagher v. Delargy, supra,* cited for plaintiff, resemble the one before us; for there the husband had never resided in this State, where the wife had resided for many years, transacting business as a *femme sole.* True, it is alleged that Allen deserted his wife, but this he might have done and still have resided in this State. The disposition

made by the circuit court of defendant's motion to dismiss the cause was, therefore, correct, and judgment affirmed. All concur.