## FAIRCHILD v. CRESWELL, *Appellant*.

### DIVISION TWO.

1. **Married Woman:** CONVEYANCE OF SEPARATE ESTATE. A wife may convey land which is her separate estate without her husband joining in the deed.

2. ————: CONVEYANCE: HUSBAND'S ABANDONMENT AND LEAVING STATE. When a husband permanently abandons his wife and leaves the state she may convey her land as a *feme sole*.

3. **Ejectment:** IMPROVEMENTS. A claim for improvements cannot be tried in an ejectment suit; it must be preferred, after judgment for possession, in a direct proceeding for that purpose in the court which rendered the judgment in ejectment.

4. ————: REVERSIBLE ERROR. Where the circuit court tried an ejectment suit on issues not made by the pleadings and rendered judgment inconsistent therewith, such judgment will be reversed and the cause remanded for a proper trial.

*Appeal from Caldwell Circuit Court.*—HON. J. M. DAVIS, Judge.

REVERSED AND REMANDED.

*O. J. Chapman* for appellant.

(1) Claim for improvements cannot be tried in ejectment proceeding; suit must be instituted, as provided in statute, after judgment, and before the same tribunal the ejectment case is tried before. R. S. 1889, sec. 4645, *et seq.; McClanahan v. Smith*, 76 Mo. 428; *Jasper Co. v. Wadlow*, 82 Mo. 172; *Malone v. Stretch*, 69 Mo. 25; *Henderson v. Langley*, 76 Mo. 226; *Stump v. Hornbeck*, 94 Mo. 26. (2) Action under the statute to recover for improvements made upon land in good faith must be brought in the court in which the judgment in ejectment is rendered. *Stump v. Hornbeck*, 15 Mo. App. 367. (3) The judgment and decree of the

court is uncertain, indefinite and inconsistent with the prior findings of the court. (4) The evidence must correspond with the allegations, and be confined to the point in issue. There was such issue as improvements, taxes, etc., before the court. *State v. Roberts*, 62 Mo. 388. (5) A decree must be founded upon facts, consistent with and embraced within the pleadings. *Newham v. Kenton*, 79 Mo. 382. Where husband renounces his marital relations—which he does by long residence apart from his wife and family—and permanently resides in some foreign jurisdiction, such act clothes the wife with the powers of a *feme sole*, and she may convey title to land held by her in fee without her husband joining in the deed, and in any event they could not recover the land from a purchaser from wife without first tendering him the purchase money and all sums expended by him in good faith on the land. *Danner v. Berthold*, 11 Mo. App. 351; *Phelps v. Walther*, 78 Mo. 323; *Durning v. Waddingham*, 12 Mo. App. 146; *Kramer v. McCaughey*, 11 Mo. App. 433.

*C. S. McLaughlin* for respondent.

(1) Section 4649, Revised Statutes, provides: If the value of the improvements exceed the value of the land aside from the improvements, the court may order that the occupying claimant shall, by a time to be specified in the order, take the land, and pay the ascertained value thereof to the plaintiff, and in default of such payment the plaintiff shall take possession of the land discharged from all claim of such occupying claimant. Under this section of the statute the court was authorized to render the judgment in this cause. (2) The deed from Mary Fairchild, she being a married woman, was void. 50 Mo. 228; 88 Mo. 229. (3) The husband can sue for the wife's land. *Cooper v. Ord,*

60 Mo. 420; *Dyer v. Wittler*, 89 Mo. 81. (4) Appellant appeared before the referee, and offered evidence on the question of the improvements, and is estopped to object to the court rendering judgment thereon. *Kinealy v. Macklin*, 67 Mo. 95.

GANTT, P. J.—This is an action of ejectment for the southeast quarter of section 4, township 55, range 26. Ouster laid January 1, 1882. Damages claimed, $1,600. Monthly rents, $30. The suit was commenced February 28, 1887.

Defendant filed the following answer:

"Defendant, for first amended answer to the plaintiff's petition herein, denies each and every allegation therein.

"For a further defense, defendant says, that Mary Fairchild, the wife of the plaintiff, in the year 1856, or thereabouts, became the purchaser of the land in controversy, from one Mitchell Gray, who was the patentee from the United States government; that said Mary Fairchild at the time of the purchase of said land, and for a number of years prior thereto, was separated from the husband, and doing business in her own name, and represented herself as an unmarried or single woman, and in which way she purchased said land, and soon thereafter, in 1857, sold and conveyed said land to one Jacob Mowder, representing herself as a woman authorized to do business in her own name, and make her own conveyances, and that, although she had been married, her husband had absolutely abandoned her and taken up his permanent abode in California; relying upon such representations the said Jacob Mowder purchased said land from her and paid her therefor the sum of $300; that said Mitchell Gray made said Mary Fairchild a deed to her own sole and separate use to said land; that, by proper conveyances from said Jacob

Mowder and his grantees, the defendants became the owners of said land, without any knowledge of, or concerning. said Mary Fairchild, or the plaintiff, or that they had or claimed any interest or title to the said land, the defendant paying for the said land the sum of $1,280; that said Jacob Mowder purchased said land from said Mary Fairchild in good faith, believing from her conduct and course of life, that she was entitled to convey as an unmarried woman.

"For a further defense to plaintiff's petition, the defendant says: That on or about the year 1856 the plaintiff's wife, Mary Fairchild, purchased the land in controversy from one Mitchell Gray; that said Mitchell Gray was the owner of said land from the United States, and made and delivered a deed for same to said Mary Fairchild; that at the time said Mary Fairchild purchased said land, and for a large number of years prior thereto, the plaintiff wholly abandoned the said Mary Fairchild as her husband, and moved away to the state of California, where he was permanently located, with no intention of ever returning to his said wife and family; that he had renounced all marital rights and obligations towards said Mary Fairchild; that said plaintiff has resided in the state of California from that time on up to the present time, and still resides there; that in 1857 the said Mary Fairchild sold and conveyed in her own name the land in controversy to one Jacob Mowder, representing to him that her said husband had wholly and permanently abandoned her; that said Jacob Mowder, relying upon said representations, purchased said land in good faith, knowing and believing that her husband, the plaintiff, had wholly abandoned her, and paid the sum of $300; that said Mowder was put in possession of said land as the owner thereof, and, by proper and legal conveyances from said Jacob Mowder and his grantees and assigns, the defendant became and

is the owner in fee simple of said land; that from 1857 to the present time the said Jacob Mowder and his grantees have been in actual, open, notorious, adverse and continuous possession of said land, claiming the same. Defendant having fully answered asks to be discharged with his costs."

Plaintiff, to maintain the issues on his part, introduced the following evidence:

Agreement of parties as follows:  "It is hereby agreed between the parties to the suit that the defendant's paper title to the land in controversy as shown by the deed records of Caldwell county is as follows:  Deed from Mary Fairchild to Jacob Mowder, dated, May 23, 1857; recorded, January 6, 1858; warranty deed; consideration, $300.  Deed from Jacob Mowder and wife to Levy Beck, dated, January 16, 1858; recorded, October 9, 1858; warranty deed; consideration, $300.  Deed from Levy Beck and wife to Charles W. Mowder, dated, August 10, 1869; recorded, November 16, 1869; consideration, $1,200; warranty deed.  Warranty deed from Charles W. Mowder and wife to C. C. McWilliams and Brutus Cook, dated, January 24, 1880; recorded, February 6, 1880; consideration, $1,400.  Warranty deed from C. C. McWilliams and wife and Brutus Cook and wife to Timothy Toomay, dated, October 6, 1881; recorded, June 14, 1882; consideration, $1,200.  Deed from Timothy Toomay and wife to David Creswell, the defendant, dated, June 13, 1885; recorded, August 3, 1885; consideration, $1,280.  It is further agreed that on the trial of said cause the foregoing admissions may be submitted to the court as evidence of such conveyances, in lieu of the original deeds or copies thereof."

Plaintiff then read deposition of Ebenezer Fairchild, who testified:  "My name is Ebenezer Fairchild. Sixty-four years of age.  Reside in Salmon Falls town-

ship, Eldorado county, California. I am plaintiff in this suit. Was married in March, 1842, to Mary Davis, a daughter of Dennis Davis. We first resided at her father's in Pike county, Illinois. About the first of April, 1843, her father moved to Caldwell county, Missouri, and we went with him. We lived there until spring of 1847, when we moved back to her father's place in Pike county, Illinois, and staid until spring of 1850. We came back to Caldwell county, Missouri, in spring of 1850, and I then left my wife and child at her father's, and I came to California. My object in coming to California was on account of gold excitement and for the purpose of making money and bettering our condition. The arrangement between my wife and myself was that if I thought it advisable when I got there I was to send her money to come, and she was to come here. I corresponded with her about once a month up to 1856. In 1851, sent her five or six letters with specimens of gold in them; in 1852, sent her three letters with from $1 to $5 in gold coin in them, and a check for $50. In 1853 sent her a check for $100. In 1856, in response from a letter received from her, I sent her two bills of exchange for $250, each. (Here is introduced the letters and records of said bills of exchange marked 'plaintiff's exhibits "A," "B" and "C"' and attached and made a part of deposition.) This money was sent to pay her passage to California. There were three children born of our marriage—one born in 1846 and died same year, named Elizabeth Ann, Johanna, born April 10, 1848, and Willard Edgar, born December 22, 1850. The first and third born in Caldwell county, Missouri, and second, Pike county, Illinois. Last I hear from my wife and children was in 1857. I think, after 1857, I wrote to her folks to find where she was, and they wrote that she was gone and they couldn't learn her whereabouts. During the War of the

Rebellion, I wrote, but could get no reply. In 1866, I think, her father wrote to me to know if she had come to California; said she had left, leaving her property there. I have frequently made inquiry for her and the children, but could learn nothing. In 1885, I advertised for them in St. Louis papers and Kansas City, Missouri, papers, and in some Texas papers, and have written various letters to various persons, but could obtain no trace of them. I was never divorced from her, and have never married again."

Cross-examination: "Have resided here in Salmon Falls township since 1862. Lived with my wife until May 3, 1850. Part time in Illinois and balance in Caldwell county, Missouri. In 1850 it was agreed between me and my wife that I was to come to California to search for gold, and, if I found things satisfactory, I was to send for her and she was to come. Never was away from my wife any length of time until I came here. I don't know where she is now. In 1881 and 1882, I was here where I now reside. In December, 1883, I was thrown from a wagon and had my thigh broken; was taken to county hospital of Sacramento county, California; remained there ninety-three days; was then brought back to my home and remained there until July, 1884, when I went East as far as Black Oak, Caldwell county, Missouri. Remained East about three months. Left Kansas City, Missouri, for California, October 20, 1884. Was on the road about a week, and been here ever since. Last saw my wife in 1850 at her father's in Caldwell county, Missouri. She came to the wagon, and bade me good-bye as I was starting for California. Can't tell whether she is still living or not. There were three children born of our marriage. Last child born in December, 1850, and I left for California in May, 1850. I never accused my wife of being too intimate with other men. My wife never bore a bad

reputation for chastity, to my knowledge. Never saw the last child. Saw the other one in May, 1850, last time. I did not take my child into my own custody, because at its age I thought it better off in charge of its mother. I never charged to my wife that other men were the father of my child or children."

J. R. Lane testified: "I live in Caldwell county, have known the land since I was a boy. I knew Mrs. Fairchild. She was living with her father; she was there a year or so; she pretended to own the land; I saw her children there; never saw Fairchild till he returned here five or six years ago. My recollection is she went on the land about 1856; think she left it in 1856; don't know where she went; I first knew her in 1850; my understanding was that Fairchild was gone to California; never heard anything against her until he left her; she went back to Illinois, and then came back and went into an old house belonging to her brother; I have heard she was common property; more than likely I talked to Gray about her; I heard she had sold the land; I can't say whether the land is all in cultivation or not; its rental value is from $2 to $2.50 per acre; a good deal of it can't be cultivated; think it is rough."

Jacob Phillips testified: "I know the land. I knew it for the last five years. It is rough land. Can't say how much in cultivation. The cultivated is worth $2 per acre. It would take a year or two to get it in shape. Can't tell what it has been worth for last five years. I think about $30 per year, fifty cents per acre. The rental value now is $2 per acre. It is rough land. A good deal cannot be cultivated."

Defendant then rested.

Defendant then offered a demurrer to plaintiff's evidence, which the court overruled, and to which ruling of the court the defendant then and there excepted.

Defendant then offered evidence that plaintiff in 1850 abandoned his wife and went to California, and never returned to this state until about 1887. Jacob Mowder bought the land of Mrs. Fairchild, with the understanding that her husband had abandoned her.

The land was very rough. Mowder and those who bought under him continuously exercised ownership over the land, paid the taxes, and it was known as the Beck and Mowder land from the time Mrs. Fairchild sold it.

At the October term, 1888, the court rendered a judgment for possession for plaintiff but found that defendant should be reimbursed for $300 paid for said land by Jacob Mowder to Mary Fairchild, with interest from May 23, 1857, the rate of interest to be fixed hereafter; also all taxes and value of improvements; that defendant should be charged with rents during his occupation. And appointed Seth Young referee, to take the account as above indicated, and adjudged, "that upon tender of payment by plaintiff to defendant of the amount ascertained by the court and accounted due him, that plaintiff have and recover possession of said land, and that execution issue accordingly."

At February term, 1886, the referee reported the value of improvements made by defendant to be $906; taxes paid, $246.47; value of rents, $580. Thereupon, the court rendered the following *other* judgment: "On the first day of March, 1889 (during the February term of said court), the following judgment was rendered in this cause: 'Now on this day came the parties herein by their attorneys, and this cause coming on for hearing on the report of the referee in the cause, Seth Young, and it appearing from such report, and the evidence offered, that the value of the improvements placed on the land in suit by the defendant, including the taxes paid on the land by the defendant, and the

$300 and interest paid for said land by Jacob Mowder to Mary Fairchild on the twenty-third day of May, 1857, amount to the sum of $1,457.47, after deducting therefrom the value of the rents and profits of said land, and it further appearing to the court that the land in suit without the improvements placed thereon by the defendant is worth $1,000.

" 'That the value of the improvements of said land, to-wit, the southeast quarter of section number 4, township number 55, range 26, exceed the value of said land aside from the improvements. It is, therefore, ordered and directed by the court that the defendant on or before the first day of the next term of this court pay to the plaintiff the ascertained value of said land, to-wit, the sum of $1,000; and defendant shall take the land. And that, if defendant fails to pay plaintiff said $1,000 as herein directed, that plaintiff shall take and recover possession of said land, discharged from all claim of the defendant, and that plaintiff recover his costs, and that execution issue accordingly.' "

In due season the defendant filed his motion for new trial and in arrest, upon the ground mainly that the judgment was against the law, not responsive to the pleadings, was inconsistent therewith, and was against the evidence and unauthorized by law. No instructions were asked or refused. No exceptions to evidence saved.

I. Defendant by his answer tendered two distinct issues: *First*. That Mary Fairchild bought the land in controversy in 1856 from Mitchell Gray, the patentee of the United States; that said Gray conveyed it to her by deed to her own sole and separate use. Had he established this fact, the finding and judgment must have been for him, because it stands confessed that she conveyed it to Jacob Mowder by warranty deed of March 25, 1857, and it was unnecessary for her husband

to join in said conveyance. *Turner v. Shaw*, 96 Mo. 22; *Small v. Field*, 102 Mo. 164; *Pitts v. Sheriff*, 108 Mo. 110. *Second.* That the plaintiff abandoned his wife, the said Mary Fairchild, in 1850, and removed to the state of California, and had ever since resided there; that, while so abandoned, said wife bought and sold said land.

If the court found this defense to be true, then her deed was equally efficient, and operated to pass the title, notwithstanding her coverture. *Gallagher v. Delargy*, 57 Mo. 29; *Musick v. Dodson*, 76 Mo. 624.

But as no instructions were given or refused, we have no means of knowing what views the court held on either of these propositions. Nor can we tell from this record whether the trial court regarded this as a suit at law or in equity. No jury was impaneled, and no waiver of a jury is to be found in the transcript sent here.

It is, however, very plain that the court exceeded its jurisdiction, when it proceeded to find the value of the improvements, and the amount of purchase money and interest and taxes. There was no foundation in the pleadings for any such finding. The claim for improvements cannot be tried in the ejectment suit. It must be preferred after judgment for possession in a direct proceeding for that purpose in the court that rendered the judgment in ejectment.

We accordingly reverse the judgment, to the end that the cause may be retried and the issues presented, so that, if necessary, on another appeal, we may ascertain the theory of the trial court. Indeed, we are unable to tell whether the plaintiff claims this land by virtue of his marital right as husband of a living wife, of a wife dead with children surviving her, or whether he claims as heir-at-law of both wife and children, relying upon the presumption that, after an unexplained

absence of seven years, they are all dead.   In this latter
case, the time when they disappeared should be so fixed
as to enable the triers of the fact, whether court or
jury, to say whether he was not barred by the statute
of limitations.   As it is a law case, appropriate instruc-
tions should present the different views.   For the
errors in hearing issues not made in the pleadings and
rendering judgments wholly inconsistent therewith,
the judgment is reversed and the cause remanded.   All
concur.